





**In the event of loss, send notice to:**

Email Claim Department: - claims@berkleyfinsecure.com

Fax:  (866) 915-7879

Phone:  (866) 539-3995 (Option 3)

849 Fairmount Avenue, Suite 301

Towson, MD  21286

**All other inquires, please contact:**

Berkley FinSecure

849 Fairmount Avenue, Suite 301

Towson, MD  21286

Phone:  (866) 539-3995

**Loss Notices:**

The loss notice forms can be found on our website: www.berkleyfinsecure.com/claims





As a feature of your policy with Berkley FinSecure, your company now has access to CYBER Carry*Thru, powered by NetDiligence[®].

CYBER Carry*Thru is a private mobile-friendly portal containing information and technical resources that can assist you in the prevention of network, cyber and privacy losses and support you in the timely reporting and recovery of losses if an incident occurs.

The CYBER Carry*Thru portal is an internet-based service that features news, content and services from leading practitioners in risk management, computer forensics, forensic accounting, crisis communications, legal counsel, and other highly-specialized segments of cyber risk.

Please note the following:

1. The CYBER Carry*Thru portal is a private site for customers of Berkley FinSecure only. Do not share portal access instructions with anyone outside your organization. You are responsible for maintaining the confidentiality of the **Access Code** provided to you.

2. Up to three individuals from your organization may register and use the portal. Ideal candidates include your company's Risk Manager, Compliance Manager, Privacy Officer, IT Operations Manager or Legal Counsel.

3. **Should you experience a data breach event, you may choose to call the Breach Coach**[®] **listed in the portal for immediate triage assistance. Your initial consultation is free of charge, and subsequent use of the breach services is at a rate that has been discounted for Berkley FinSecure insureds.  Please be aware that the Breach Coach service is provided by a third-party law firm. Therefore, contacting the Breach Coach does NOT satisfy the claim notification requirements of your policy.**  To report a claim you may email our claim department at claims@berkleyfinsecure.com.

To register for Berkley FinSecure's CYBER Carry*Thru:

1. Go to www.eriskhub.com/cybercarrythru , there is a link to CYBER Carry*Thru on the Berkley FinSecure website under the Resources Tab.

2. Complete the **New User Registration** form.  Enter ████ in the Access Code field. Create your own Username and password.

3. Once you've completed registration, you can login immediately by entering the Username and password you just created in the **Login** box in the top right corner of the screen.

**STAR 00002**





As a feature of your policy with Berkley FinSecure, your company now has access to EPL Carry*Thru.

As one of our EPL customers, you have unlimited access to **our toll free EPL Carry*Thru Help Line at 844-866-1964**. Through the Help Line, you are eligible to receive free employment practices information and general guidance from the national employment law firm of Jackson Lewis including:

- Wage and hour issues

- Employee leaves of absence

- Protecting company and employee information and other human resource issues

### Valuable Services to Enhance Your Employment Practices

In addition, you may access the following services from Jackson Lewis:

- Access to Jackson Lewis resources through www.berkleyfinsecure.com/epl-carry-thru/; this link to EPL Carry*Thru can also be found under the Resources tab on the Berkley FinSecure website.

- Free subscription to Jackson Lewis' Preventive Strategies for Employers newsletter as well as other publications

- Discounted rates for assistance in developing preventive practices, creating employee handbooks and training supervisors

- Discounted rates on Jackson Lewis seminars and programs

Calls to the Help Line or requests for assistance made online are responded to within 24 hours by a qualified attorney.

<u>Please Note:</u>

*The Help Line is not a substitute for the retention of legal counsel to obtain ongoing legal advice on specific problems. It is designed to provide you with quick answers to basic or general questions. Inquiries that may require extensive research, review of personnel documentation or preparation of personnel policies or forms are beyond the scope of the Help Line service. Berkley FinSecure and Jackson Lewis P.C. disclaim all liability with respect to any information provided during a Help Line call and /or any of the services described above. Please be aware that availing yourself of any of the services described above will not constitute the filing of a notice of claim.*

**STAR 00003**

1st Financial Federal Credit Union
MLP 6014300 - 11
11/28/2016

# POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism, as defined in the Terrorism Risk Insurance Act, as amended, (the "Act"), is included in your policy.  As defined in Section 102(1) of the Act:  The term "act of terrorism" means any act that is certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism;  to be a violent act or an act that is dangerous to human life, property, or infrastructure;  to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission;  and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.  Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Act.  However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events.  Under the formula, the United States Government generally reimburses 85% through 2015;  84% beginning January 1, 2016;  83% beginning on January 1, 2017;  82% beginning on January 1, 2018;  81% beginning on January 1, 2019 and 80% beginning on January1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.  The Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year.  If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual Premium that is attributable to coverage for acts of terrorism as defined in the Act, is included in the policy premium, and does not include any charges for the portion of losses covered by the United States government Under the Act.

Name of Insurer:  StarNet Insurance Company
Policy Number:  MLP 6014300 - 11

IL PN 83 14 01 15                    © 2015 National Association of Insurance Commissioners        Page 1 of 1

STAR 00004

INTERLINE
IL 83 19 08 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ CAREFULLY**

# OFFICE OF FOREIGN ASSET CONTROL (OFAC) EXCLUSION ENDORSEMENT

No insurer shall be deemed to provide cover and no insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions laws or regulations of the European Union, United Kingdom or the United States*.*

Page 1 of 1

**Missouri**
**POLICYHOLDER NOTICE**


**NOTICE OF RIGHT TO FILE A COMPLAINT**
**KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS**


**PROBLEMS WITH YOUR INSURANCE?** - If you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem.


c/o FinSecure, LLC
1122 Kenilworth Drive, Suite 107
Towson, MD 21204
410-337-9260 or toll free: 866-539-3995

**MISSOURI DISCLOSURE STATEMENT -**
**ADDENDUM TO DECLARATIONS PAGE AND APPLICATION FORMS**


**DEFENSE WITHIN LIMITS DISCLOSURE**

The undersigned officer of the **parent company** understands and acknowledges that:

The limit(s) of liability contained in this policy shall be reduced and may be completely exhausted by **defense expenses** and, in such event, the Insurer shall not be liable for the costs of legal defense or for the amount of any judgment or settlement to the extent that such exceeds the limit(s) of liability of the policy.

**Parent Company**:  1st Financial Federal Credit Union

_____
 President, Chief Executive Officer, Chief Financial Officer, or equivalent (signature & title

 Dated: _____

☒ StarNet Insurance Company
Domicile Office: Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801
Home Office: 475 Steamboat Road, Greenwich, CT 06830
Underwriting Office: FinSecure, LLC, 849 Fairmount Avenue, Suite 301, Towson, MD 21286; 410-337-9260



☐ Great Divide Insurance Company
Great Divide Insurance Company
A North Dakota Company, 7233 East Butherus Drive, Scottsdale, AZ 85260
Underwriting Office: FinSecure, LLC, 849 Fairmount Avenue, Suite 301, Towson, MD 21286; 410-337-9260

(The Insurance Company noted above is herein called Insurer)

**Management Liability Insurance Policy**

**THIS IS CLAIMS MADE COVERAGE.  PLEASE READ THIS POLICY CAREFULLY.**
**This Policy is written on a claims made basis and covers only Claims first made during the Policy Period, the Automatic Reporting Period or, if exercised, the Additional Extended Reporting Period.  The Limit of Liability available to pay judgments or settlements shall be reduced and may be exhausted by amounts incurred as Defense Expenses.  The Retentions shall apply to Defense Expenses.**

**Declarations**                                      **Policy Number:**   MLP 6014300-11

Item 1:  **Company:**          1st Financial Federal Credit Union
         **Principal Address:**   1232 Wentzville Parkway
                             Wentzville, MO 63385

Item 2:  **Policy Period**: from 12:01 a.m. on   11/28/2016    to 12:01 a.m. on   11/28/2019
         local time at address listed in item 1.

Item 3:  The Policy Annual Aggregate Limit of Liability of the Insurer during each **policy year** shall be:
         $8,550,000

         **Coverage is effective only for those Insuring Agreements for which a Policy Year Limit of Liability is set forth below.**

|   | Insuring Agreement | Policy Year Limit of Liability | Retention Per Loss |
|---|---|---|---|
| A. | Directors and Officers Liability | $2,500,000 | $0 |
| B. | Company Indemnification | $2,500,000 | $10,000 |
| C. | Company Professional and Depository Services Liability | $150,000 | $10,000 |
| D. | Company Securities Liability | $0 | $0 |
| E. | Company Lender Liability | $250,000 | $10,000 |
| F. | Fiduciary Liability | $1,000,000 | $10,000 |
| G. | IRA/Keogh/Health Savings Account Liability | $150,000 | $5,000 |
| H. | Employment Practices Liability | $1,000,000 | $15,000 |
| I. | Third Party Harassment Liability | $1,000,000 | $10,000 |
| J. | Electronic Banking Liability | $2,000,000 | $25,000 |
| K. | Electronic Publishing Liability | $2,000,000 | $25,000 |
| L. | Trust Liability | $0 | $0 |
| M. | Security Breach - Privacy Liability | $2,000,000 | $25,000 |
| N. | Security Breach Expenses | $100,000 | $10,000 |
| O. | Public Relations Expenses | $100,000 | $10,000 |
| P. | Rewards | $25,000 | $0 |

Item 4:  **Retroactive Date**:   None         12:01 a. m. local time at the address listed in item 1.

**STAR 00008**

Item 5:     Extended Reporting Period
            Additional premium: ▮▮▮▮ of the annualized premium.
            Length of Extended Reporting Period:  365 days

Item 6:     The liability of the Insurer is subject to the terms of the following endorsements attached hereto.  All
            the terms and conditions of this policy apply to such endorsements except to the extent that the
            endorsement explicitly provides otherwise.
            IL 89 90 01 15
            MLP 75 00 MO 01 09
            MLP 75 11 09 09
            MLP MNS 28 06 12
            MLP MNS 55 02 14
            MLP MNS 56B 04 16
            MLP MNS 65 06 14
            MLP MNS 78 08 14
            MLP MNS 94A 05 15
            MLP MNS 100 10 15

Item 7:     Schedule of **Service Providers**:  Service Providers with whom the company has a written contract.

Item 8:     All notices to the Insurer under this policy shall be given to:
            FinSecure, LLC, 1122 Kenilworth Drive, Suite 107, Towson, MD 21204
            Claim Department phone: 866-539-3995; email: claims@finsecure.net

Item 9:     The **company** by the acceptance of this policy gives notice to the Insurer terminating or canceling any
            prior policy(ies) issued by the Insurer.   Such termination or cancelation to be effective as of the time
            this policy becomes effective.

   IN WITNESS WHEREOF, the Insurer has caused this Declarations to be signed by its President and Secretary.

StarNet Insurance Company:


_____          _____
        Director and President                     Senior Vice President and Secretary

**STAR 00009**

☒StarNet Insurance Company
Domicile Office: Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801
Home Office: 475 Steamboat Road, Greenwich, CT 06830
Underwriting Office: FinSecure, LLC, 849 Fairmount Avenue, Suite 301, Towson, MD 21286: 410-337-9260



☐Great Divide Insurance Company
Great Divide Insurance Company
A North Dakota Company, 7233 East Butherus Drive, Scottsdale, AZ 85260:
Underwriting Office: FinSecure, LLC, 849 Fairmount Avenue, Suite 301, Towson, MD 21286: 410-337-9260



(The Insurance Company noted above is herein called Underwriter)
**MANAGEMENT LIABILITY INSURANCE POLICY**

IMPORTANT NOTE:  THIS IS CLAIMS MADE COVERAGE.  PLEASE READ THIS POLICY CAREFULLY.  This policy is written on a claims made basis and covers only **claims** first made during the **policy period**, the Automatic Reporting Period or, if exercised, the Extended Reporting Period.  The Limit of Liability available to pay judgments or settlements shall be reduced and may be exhausted by amounts incurred as **defense expenses**.  Retentions shall apply to **defense expenses**.

This insurance applies only to a **claim** arising out of a **wrongful act** which occurs on or after the **retroactive date**, if any, shown in the Declarations.

This policy is not valid without a Declarations.  The only insuring agreements made a part of this policy are those for which a Policy Year Limit of Liability is shown in the Declarations.

Words in bold have special meanings as defined in Section 2, Definitions.

In consideration of the payment of premium and in reliance upon the statements made in the **Application**, and subject to the Declarations, General Terms, Conditions, Limitations, and all other terms of this policy, the Insurer, the **company** and the **insureds** agree as follows:

## Section 1.  Insuring Agreements

### A.  Directors and Officers Liability

The Insurer shall pay on behalf of the **directors** and **officers**, **loss** for which the **directors** and **officers** are not indemnified by the **company** and which the **directors** and **officers** become legally obligated to pay as a result of any **claim** first made against them, individually or otherwise, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for a **management practices act** taking place after the **retroactive date**, if any.

### B.  Company Indemnification

The Insurer shall pay on behalf of the **company**, **loss** for which the **company** grants indemnification to a **director** or **officer**, as permitted or required by law, and for which such **director** or **officer** has become legally obligated to pay as a result of any **claim** first made against such **director** or **officer** during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for a **management practices act** taking place after the **retroactive date**, if any.

**Extension - Outside Position Liability:**

Subject to all of their limitations, conditions, provisions and terms, Insuring Agreements A and B cover any **director** or **officer** for **claims** made against them in their capacity of serving in an **outside position**.  Any such coverage shall be excess of any indemnity and insurance available from or provided by the entity in which the **director** or **officer** serves in the **outside position**.  Payment by the Insurer, or any member company of the W.R. Berkley Corporation, under another policy for a **claim** against any **director** or **officer** in an **outside position** shall reduce, by the amount of such payment, the Policy Year Limits of Liability for Insuring Agreements A and B shown in the Declarations with respect to such **claim**.

**C.  Company Professional and Depository Services Liability**

The Insurer shall pay on behalf of the **company** and the **employees**, **loss** which the **company** or the **employees** become legally obligated to pay as a result of any **claim** first made against them, individually or otherwise, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for a **professional and depository services act** taking place after the **retroactive date**, if any.

**Extension - Cost of Corrections Coverage**
Subject to all of Insuring Agreement C's limitations, conditions, provisions and terms, the Insurer shall reimburse the **company** for the costs incurred by the **company** to mitigate or correct direct monetary damages to a customer of the **company** resulting from any **professional and depository services act** taking place after the **retroactive date**, if any and subject to the **company** obtaining the Insurer's prior written consent.

The Insurer's prior written consent is a condition precedent to the obligations of the Insurer under this extension of coverage.  Written notice received by the **company** of any circumstance which has resulted in direct monetary damages to a customer of the **company** and for which the **company** will be seeking coverage hereunder must be given to the Insurer pursuant to the Notice section of this policy's General Terms, Conditions and Limitations.

This extension of Cost of Corrections Coverage is subject to the following additional conditions:
  a.   such **professional and depository services act** must arise out of the **insured's** failure to follow directions from a customer of the **company** in connection with the **non-discretionary investment** of the customer's funds;
  b.   such **professional and depository services act** must arise in the ordinary course of the **company's** operations and, if not mitigated or corrected, would automatically result in direct monetary damages to the customer of the **company**; and
  c.   such **professional and depository services act** would, in the absence of any mitigation or correction, result in a covered **loss** were a **claim** to be made under this Insuring Agreement.

Notwithstanding the foregoing, the Insurer has no obligation to reimburse the **company** for direct monetary damages under this extension of coverage:
  a.   if the **company**, at the effective date of this extension of coverage, had knowledge of, or could have reasonably foreseen, any circumstance which might result in a **claim**;
  b.   arising out of the wire or electronic transfer of funds;
  c.   constituting any costs, charges or expenses required to be incurred by the **company** pursuant to any contractual obligation to a customer of the **company**, if such obligation does not otherwise constitute a covered **loss** under this insuring agreement and would not otherwise exist absent such contractual obligation (such uncovered **loss** shall include, but not be limited to, the guaranteeing of any rate of return); or
  d.   for which no coverage would have been afforded under this policy had the **professional and depository services act** resulted in a **claim.**

If the Insurer determines that it lacks sufficient information to make a decision as to coverage, the **company** shall have no recourse under this policy against the Insurer until the Insurer determines that sufficient information has been provided or until an actual **claim** has been made against the **company** or an **employee.**

The **company** and the Insurer agree that it is their intention that coverage under this extension of coverage operates to reduce or avoid, in an expeditious and economic fashion, monetary liability from a **claim** that would

have been made against the **company**, and that the coverage provided under this extension of coverage does not extend to any sum paid by the **company** that constitutes an ex-gratia settlement or a commercial settlement to support the **company's** reputation or business relationships.

In the event of coverage under this extension of coverage, the giving of the aforementioned notice of circumstances by the **company** shall be deemed to be notice of a **claim** made against the **company** or an **employee** at the time the notice is reported to the Insurer.  Coverage shall then apply to such **claim** subject to the terms and conditions of this policy.

This extension of coverage shall be part of, and not in addition to, Insuring Agreement C's Policy Year Limit of Liability.

## Exclusions Applicable to Insuring Agreement C.

The Insurer shall not be liable for **loss** in connection with any **claim**:
a. based upon, arising out of, or attributable to the **company** serving as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of creditors;
b. based upon, arising out of, or attributable to the insolvency, conservatorship, receivership, bankruptcy, or liquidation of, or financial inability to pay, or suspension of payment by, any bank or banking firm, investment company, investment bank, or any broker or dealer in securities or commodities, any insurance or reinsurance entity, or other organizations of a similar nature (including the **company**); provided, that this exclusion shall not apply to the extent such **claim** alleges a covered **professional and depository services act** solely in connection with an **insured's** investment on behalf of a customer in the stock of any of the foregoing entities;
c. based upon, arising out of, or attributable to any dispute involving fees or charges for an **insured's** services;
d. based upon, arising out of, or attributable to any transaction or event by or on behalf of a customer of the **company** involving:
   1) the **company's** underwriting or syndication of equity or debt securities;
   2) the **company's** investment banking activities, including the sale and distribution of a new offering of securities;
   3) the **company's** rendering advice, recommendations or services regarding any merger, tender offer, proxy contest, acquisition, restructuring, reorganization, recapitalization, divestiture, or similar transaction;
   4) the **company's** rendering of a "fairness opinion" regarding the valuation of any assets or business entity not held by an **insured** as trustee;
   5) any acquisition or sale of securities by an **insured** for such **insured's** own account; or
   6) any disclosure requirements in connection with subparts 1), 2), 3), 4) and 5) above;
e. based upon, arising out of, or attributable to any actual conflict of interest by an **insured**, provided such **insured** in fact knew of the conflict of interest at the time the **professional and depository services act** was committed;
f. based upon, arising out of, or attributable to safe deposit and safe keeping operations of the **company**;
g. based upon, arising out of, or attributable to any debt unpaid or obligation unfulfilled by reason of the **company's** insolvency;
h. based upon, arising out of, or attributable to any federal, state or local tax laws or regulations;
i. based upon, arising out of, or attributable to the failure to collect contributions owed to an employee benefit plan or other employee program (unless such failure is the result of negligence of a **director, officer** or **employee**); or
j. based upon, arising out of, or attributable to benefits paid or payable to a participant or beneficiary of an employee benefit plan or other employee program if such benefit may lawfully be paid from the funds for the employee benefit plan or other employee program.

## D.  Company Securities Liability

The Insurer shall pay on behalf of the **company** and the **employees**, **loss** which the **company** or the **employees** become legally obligated to pay as a result of any **claim** first made against them, individually or otherwise, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for a **securities act** taking place after the **retroactive date**, if any.

**Extension - Investigative Costs Coverage**

Subject to all of Insuring Agreement D's limitations, conditions, provisions and terms on behalf of the **company**, the Insurer shall pay up to $100,000 of the reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of a **director, officer** or **employee**) incurred by the **company**, in connection with the **company's** investigation or evaluation of any **claim** for a **securities act** first made against the **company** or an **employee** during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, by one or more security holders of the **company**, without the solicitation, assistance or active participation of any **director, officer** or **employee**.  This extension of coverage shall be part of, and not in addition to, Insuring Agreement D's Policy Year Limit of Liability.

**Exclusion Applicable to Insuring Agreement D.**

The Insurer shall not be liable for **loss** in connection with any **claim** based upon, arising out of, or attributable to the actual or proposed payment by the **company** of allegedly inadequate consideration in connection with the **company's** purchase of securities issued by the **company**, however this exclusion shall not apply to **defense expenses.**

**E.   Company Lender Liability**

The Insurer shall pay on behalf of the **company** and the **employees**, **loss** which the **company** or the **employees** become legally obligated to pay as a result of any **claim** first made against them, individually or otherwise, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for a **lending act** taking place after the **retroactive date**, if any.

**Exclusions Applicable to Insuring Agreement E.**

The Insurer shall not be liable for **loss** in connection with any **claim**:
   a.  based upon, arising out of, or attributable to any error, misstatement, misleading statement, act, omission, neglect or breach of duty arising out of the operation or control of any entity or property that the **company** acquired as security or collateral for any loan, lease or extension of credit;
   b.  based upon, arising out of, or attributable to the **company** serving as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of creditors;
   c.  based upon, arising out of, or attributable to any actual conflict of interest by an i**nsured**, provided such **insured** in fact knew of the conflict of interest at the time the **lending act** was committed;
   d.  based upon, arising out of, or attributable to any intentional noncompliance with a statute or regulation committed by the **company**;
   e.  based upon, arising out of, or attributable to the failure to effect or maintain any insurance or bond;
   f.  based upon, arising out of, or attributable to the bankruptcy of or suspension of payment by any financial institution;
   g.  based upon, arising out of, or attributable to any extension of credit to any **director, officer** or **employee** or to any entity in which a **director, officer** or **employee** has a controlling interest; for the purposes of this exclusion, controlling interest means:
        1)  the ownership, control or power to vote 25% or more of any class of voting securities of the entity,
        2)  the control of the election of a majority of the directors of the entity,
        3)  the power to exercise a controlling influence over the directors and/or officers of the entity, or
        4)  the power to exercise a controlling influence over the policies adopted by the entity.
   h.  based upon, arising out of, or attributable to the insolvency or bankruptcy of the **company**; or
   i.  based upon, arising out of, or attributable to any extension of credit which was, at the time it was made, in excess of 110% of the legal lending limit of the **company**.

**F.   Fiduciary Liability**

The Insurer shall pay on behalf of the **directors, officers**, **employees** and the **company**, **loss** which the **directors, officers**, **employees**, or the **company** become legally obligated to pay as a result of any **claim** first

STAR 000013

made against them, individually or otherwise, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for a **fiduciary act** taking place after the **retroactive date**, if any.

## Extension - Voluntary Compliance Program Coverage

Subject to all of Insuring Agreement F's limitations, conditions, provisions and terms, the Insurer shall pay up to $100,000 on behalf of the **insureds** for any fees, penalties or sanctions (other than the cost of corrections) imposed by law under a **voluntary compliance program** or a voluntary settlement program, administered by the Internal Revenue Service of the United States of America or any other governmental body, entered into by any **insured** that any **insured** becomes legally obligated to pay as a result of a covered **fiduciary act** taking place after the **retroactive date**, if any.   A condition precedent to the obligations of the Insurer under this extension of coverage is the Insurer receiving during the **policy period**, Automatic Reporting Period, or if exercised, the Extended Reporting Period, written notice from an **insured**, of the **insured's** intent to enter into such **voluntary compliance program** or such voluntary settlement program.  This extension of coverage shall be part of, and not in addition to, Insuring Agreement F's Policy Year Limit of Liability.

## Extension - Health Insurance Portability and Accountability Penalties Coverage

Subject to all of Insuring Agreement F's limitations, conditions, provisions and terms, the Insurer shall pay up to $50,000 on behalf of the **insureds** for civil money penalties imposed upon any one or more **insureds** for any violation of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996 (and any amendments thereto), that any **insured** becomes legally obligated to pay during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, as a result of a covered **fiduciary act** taking place before the expiration of the policy and after the **retroactive date**, if any. This extension of coverage shall be part of, and not in addition to, Insuring Agreement F's Policy Year Limit of Liability."

## Exclusions Applicable to Insuring Agreement F.

The Insurer shall not be liable for **loss** in connection with any **claim**:
    a.  for any actual or alleged obligation of an **insured** under any law governing workers compensation, unemployment, social security or disability benefits, except the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended; or
    b.  based upon, arising out of, or attributable to the failure to effect or maintain any insurance or bonds required by law or established as a standard by any regulatory or industry body.
The Insurer shall not be liable for that part of **loss** which constitutes:
    a.  benefits due or which become due under any **plan**;
    b.  benefits which would be due under any **plan** if such **plan** complied with all applicable law;
    c.  that portion of any settlement or judgment which constitutes benefits, provided this shall not apply to the extent that recovery for such benefits is based upon a covered **fiduciary act** by a **director, officer** or **employee** and such benefits are payable as a personal obligation of such **director, officer** or **employee;**
    d.  contributions owed by the **company** to a **plan** which any **insured** failed to collect, unless such failure is because of the negligent act, error or omission of an **insured** solely in the **administration** of such **plan**; or
    e.  the return or reversion to an employer of any contribution or asset of a **plan**.
    These exclusions shall not apply to **defense expenses**.


## G.  IRA/Keogh/Health Savings Account Liability

The Insurer shall pay on behalf of **directors, officers**, **employees** and the **company**, **loss** which the **directors, officers**, **employees** or the **company** become legally obligated to pay as a result of any **claim** first made against them, individually or otherwise, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for an **IRA/Keogh/Health Savings Account act** taking place after the **retroactive date**, if any.


## H.  Employment Practices Liability

The Insurer shall pay on behalf of the **directors, officers**, **employees** and the **company**, **loss** which the **directors, officers**, **employees** or the **company** become legally obligated to pay as a result of any **claim** first

made against them, individually or otherwise, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for an **employment practices act** taking place after the **retroactive date**, if any.

**Exclusions Applicable to Insuring Agreement H.**

The Insurer shall not be liable for **loss** in connection with any **claim**:
   a.   based upon, arising out of, or attributable to any obligation under **ERISA**, or a workers' compensation, disability benefits or unemployment compensation law, or any similar act;
   b.   based upon, arising out of, or attributable to a lockout, strike, picket line, replacement or other similar actions resulting from labor disputes or labor negotiations; or
   c.   based upon, arising out of, or attributable to the Workers' Adjustment and Retraining Notification Act, Public Law 100-379(1988), or any amendments thereto, or any similar federal, state or local law;
The Insurer shall not be liable for that part of **loss** which constitutes:
   a.   severance pay owed pursuant to a settlement agreement in a **claim** for **loss** otherwise covered hereunder unless the Insurer consents to the inclusion of such severance pay in such settlement agreement;
   b.   compensation earned by the claimant in the course of employment but not paid by the **company** including any unpaid salary, wages, or bonuses; provided this exclusion shall not apply to back pay or front pay; or **defense expenses;** or
   c.   fringe benefits, deferred payments (including insurance premiums in connection with an employee benefit plan), stock, stock options or warrants, stock appreciation rights, or similar rights in securities or rights to purchase securities; or the value thereof, or other perquisites, or any amounts that constitute severance pay pursuant to an express written obligation as part of employment termination; provided this exclusion shall not apply to:
      1)   medical, pension, disability, life insurance or other similar employee benefits or insurance premiums in connection with employee benefit plans to the extent a judgment or settlement in a **claim** for actual or constructive wrongful discharge or termination expressly includes a monetary amount for consequential damages representing such employee benefits or insurance premiums; or
      **2)   defense expenses**.

**I.   Third Party Harassment Liability**

The Insurer shall pay on behalf of the **directors, officers**, **employees** and the **company**, **loss** which the **directors, officers**, **employees** or the **company** become legally obligated to pay as a result of any **claim** first made against them, individually or otherwise, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for a **third party harassment act** taking place after the **retroactive date**, if any.

**J.   Electronic Banking Liability**

The Insurer shall pay on behalf of the **directors, officers**, **employees** and the **company**, **loss** which the **directors, officers**, **employees** or the **company** become legally obligated to pay as a result of any **claim** first made against them, individually or otherwise, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for an **electronic banking act** taking place after the **retroactive date**, if any.

**Exclusions Applicable to Insuring Agreement J.**

The Insurer shall not be liable for **loss** in connection with any **claim** made against any **insured**:
   a.   based upon, arising out of, or attributable to the actual or alleged mechanical failure, faulty construction, error in design, latent defect, fire, wear or tear, gradual deterioration, electrical disturbances or electrical surge which affects a **covered electronic system** or failure or breakdown of electronic data processing media;
   b.   based upon, arising out of, or attributable to the interruption or failure of any component of the internet or of any infrastructure supporting the internet or other network providing access to or from any **covered**

**electronic system**, unless such component or infrastructure was under either the **company's** or a **service provider's** direct control;

c.   based upon, arising out of, or attributable to the interruption or failure of any power or utility service; or

d.   based upon, arising out of, or attributable to the interruption or failure of any satellite in whole or in part.


## K.  Electronic Publishing Liability

The Insurer shall pay on behalf of the **directors, officers**, **employees** and the **company**, **loss** which the **directors, officers**, **employees** or the **company** become legally obligated to pay as a result of any **claim** first made against them, individually or otherwise, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for an **electronic publishing act** taking place after the **retroactive date**, if any.


## L.  Trust Liability

The Insurer shall pay on behalf of the **directors, officers**, **employees** and the **company**, **loss** which the **directors, officers**, **employees** or the **company** become legally obligated to pay as a result of any **claim** first made against them, individually or otherwise, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for a **trust act** taking place after the **retroactive date**, if any.

### Extension - Cost of Corrections Coverage

Subject to all of Insuring Agreement L's limitations, conditions, provisions and other terms, the Insurer shall reimburse the **insureds** for the costs incurred by an **insured** to mitigate or correct direct monetary damages to a customer of the **company** resulting from any **trust act**, taking place after the **retroactive date**, if any, and subject to the **insured** obtaining the Insurer's prior written consent.

The Insurer's prior written consent is a condition precedent to the obligations of the Insurer under this extension of coverage.  Written notice received by the **company** of any circumstance which has resulted in direct monetary damages to a customer of the **company** and for which an **insured** will be seeking coverage hereunder must be given to the Insurer pursuant to the Notice subsection of Section 4. General Terms, Conditions and Limitations.

This extension of Cost of Corrections Coverage is subject to the following additional conditions:

a.   such **trust act** must arise out of the **insured's** failure to follow directions from a customer of the **company** in connection with the **non-discretionary investment** of the customer's funds;

b.   such **trust act** must arise in the ordinary course of the **company's** operations and, if not mitigated or corrected, would automatically result in direct monetary damages to the customer of the **company**; and

c.   such **trust act** would, in the absence of any mitigation or correction, result in a covered **loss** were a **claim** to be made under this insuring agreement.

Notwithstanding the foregoing, the Insurer has no obligation to reimburse an **insured** for direct monetary damages under this extension of coverage:

a.   if the **insured**, at the effective date of this extension of coverage, had knowledge of, or could have reasonably foreseen, any circumstance which might result in a **claim**;

b.   arising out of the wire or electronic transfer of funds;

c.   constituting any costs, charges or expenses required to be incurred by the **company** pursuant to any contractual obligation to a customer of the **company**, if such obligation does not otherwise constitute a covered **loss** under this insuring agreement and would not otherwise exist absent such contractual obligation (such uncovered **loss** shall include, but not be limited to, the guaranteeing of any rate of return); or

d.   for which no coverage would have been afforded under this policy had the **trust act** resulted in a **claim.**

If the Insurer determines that it lacks sufficient information to make a decision as to coverage, the **insureds** shall have no recourse under this policy against the Insurer until the Insurer determines that sufficient information has been provided or until an actual **claim** has been made against an **insured.**

The **insureds** and the Insurer agree that it is their intention that coverage under this extension of coverage operates to reduce or avoid, in an expeditious and economic fashion, monetary liability from a **claim** that would have been made against an **insured**, and that the coverage provided under this extension of coverage does not extend to any sum paid by the **company** that constitutes an ex-gratia settlement or a commercial settlement to support the **company's** reputation or business relationships.

In the event of coverage under this extension of coverage, the giving of the aforementioned notice of circumstances by the **company** shall be deemed to be notice of a **claim** made against an **insured** at the time the notice is reported to the Insurer.  Coverage shall then apply to such **claim** subject to the terms and conditions of this policy.

This extension of coverage shall be part of, and not in addition to, Insuring Agreement L's Policy Year Limit of Liability.

**Exclusions Applicable to Insuring Agreement L.**

The Insurer shall not be liable for **loss** in connection with any **claim**:

    a.   based upon, arising out of, or attributable to an **insured** serving as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of creditors, provided; this exclusion shall not apply to functions or activities of an **insured** as a trustee under a trust indenture;

    b.   based upon, arising out of, or attributable to the insolvency, conservatorship, receivership, bankruptcy, or liquidation of, or financial inability to pay, or suspension of payment by, any bank or banking firm, investment company, investment bank, or any broker or dealer in securities or commodities, any insurance or reinsurance entity, or other organizations of a similar nature (other than the **company**) provided, this exclusion shall not apply to the extent such **claim** alleges a covered **trust act** solely in connection with an **insured's** investment on behalf of a customer in any of the foregoing entities;

    c.   based upon, arising out of, or attributable to any dispute involving fees or charges for an **insured's** services;

    d.   based upon, arising out of, or attributable to the mechanical or electronic failure, breakdown or malfunction of any machine or computer or systems of machines or computers including peripheral components, or of any systems, application software, terminal devices or related communications networks including power supplies;

    e.   based upon, arising out of, or attributable to the **insured's** activities as a trustee under any pension, profit sharing, health and welfare or other employee, director or officer benefit plan or trust sponsored or established by the **insured** for its own **directors**, **officers** or **employees**;

    f.   based upon, arising out of, or attributable to any actual conflict of interest by an **insured**, provided such **insured** in fact knew of the conflict of interest at the time the **trust act** was committed;

    g.   failure to collect contributions owed to any pension or welfare plan from employers unless such failure is due to the negligence of an **insured**;

    h.   based upon, arising out of, or attributable to the insolvency or bankruptcy of an **insured**; or

    i.   for any **claim** made by any entity which is owned, operated or managed in whole or in part by an **insured**, or by any person or entity which controls an **insured**.

**M.  Security Breach - Privacy Liability**

The Insurer shall pay on behalf of the **directors, officers**, **employees** and the **company**, **loss** which the **directors, officers**, **employees** or the **company** become legally obligated to pay as a result of any **claim** first made against them, individually or otherwise, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for a **security breach** taking place after the **retroactive date**, if any.

**N.  Security Breach Expenses**

The Insurer shall pay on behalf of the **company**, **security breach expenses** which the **company** incurs during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, as the result of a **security breach** taking place after the **retroactive date**, if any, and before the expiration of this policy.

**O.  Public Relations Expenses**

The Insurer shall pay on behalf of the **company**, **public relation expenses** which the **company** incurs during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, as the result of **negative publicity** caused by a **wrongful act** taking place after the **retroactive date**, if any, and before the expiration of this policy.


**P.  Rewards**

The Insurer shall pay on behalf of the **company**, **rewards** which the **company** pays during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period.


**Section 2.  Definitions**

When used in this policy, either in the singular or plural, the following terms have the following meanings.

A.  **Administration** means:
   a.  counseling **officers**, **employees**, beneficiaries or **plan** participants with respect to any **plan**;
   b.  providing interpretations with respect to any **plan**;
   c.  handling records in connection with any **plan**; or
   d.  enrolling, terminating or canceling **officers** or **employees** under any **plan**.

B.  **Application** means all signed applications and questionnaires, including attachments and all information and materials submitted during the application process for this policy or for any policy of which this policy is a direct or indirect renewal or replacement.  All such applications, attachments and materials are deemed attached to and incorporated into this policy.

C.  **Claim** means the following, including any appeal therefrom:
   a.  an oral or written demand for monetary damages or non-monetary relief;
   b.  a civil proceeding commenced by the service of a complaint or similar pleading;
   c.  a notice of an arbitration proceeding or an arbitration proceeding;
   d.  an administrative or regulatory proceeding commenced by the filing of a notice of charges;
   e.  a formal investigative order or a similar legal document, except that with respect to an audit conducted by the United States of America Office of Federal Contract Compliance Programs, such proceeding shall be deemed commenced by an **insured's** receipt of a Notice of Violation or Order to Show Cause, or a written demand against an **insured** for monetary damages or non-monetary relief;
   f.  a written request to toll or waive a statue of limitations, relating to a potential **claim** described above; or
   g.  solely with respect to a **fiduciary act**, any fact-finding investigation of any **insured** by the Department of Labor or the Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States of America, however **claim** shall not include any labor, grievance, arbitration or other proceeding pursuant to a collective bargaining agreement.

   A **claim** shall be deemed to have been made on the date an **insured** receives notice of any oral or written demand or of the events described in c, e or g above or on the date that the judicial or administrative proceeding is filed in court or with the administrative agency.

   All **claims** involving **interrelated wrongful acts** shall be considered a single **claim** and shall be deemed to have been first made when the earliest **claim** was first made.

D.  **Company** means any entity named in the Declarations and its **subsidiaries**.

E.  **Covered electronic system** means computer hardware or software owned by or licensed to, and controlled by the **company**, or, if applicable, owned by or licensed to, and controlled by a **service provider**.

F.  **Defense expenses** means reasonable costs, charges, fees (including attorneys' fees, experts' fees, and mediators' or arbitrators' fees) and expenses (other than regular or overtime wages, salaries or fees of any

**director, officer** or **employee**) incurred in defending or investigating a covered **claim** or the appeal of a covered **claim**, including the premium for appeal, attachment or similar bonds; however, **defense expenses** do not include any amount paid by any insurer pursuant to another policy of insurance under which there is a duty to defend.

G. **Director** or **officer** means any natural person who was, now is or shall be:
   a. a duly elected or appointed director or officer of the **company**;
   b. a duly elected or appointed honorary or advisory director of the **company**;
   c. a duly elected, appointed or selected manager or member of the board of managers of the **company**;
   d. a duly elected, appointed or selected member of a management, advisory or board committee of the **company**;
   e. with respect to any **non-profit entity** that is a **subsidiary**, a duly elected or appointed director, officer or trustee of any such **subsidiary**;
   f. the general counsel or risk manager (or equivalent position) of the **company**; and/or
   g. only with respect to the Fiduciary Liability Insuring Agreement, a duly elected or appointed trustee, director or officer of a **plan**.
   when acting in their capacity as such.

H. **Domestic partner** means any natural person qualifying as such under the provisions of any federal, state or local law or under the provisions of any formal written program established by the **company**.

I. **Electronic banking act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty which results in any:
   a. unauthorized use of, or unauthorized access to, electronic data or software within any **covered electronic system**;
   b. malicious, subversive or unauthorized introduction or implantation of any computer code, program or other data into, or attack upon, any **covered electronic system** causing the alteration, distortion, deletion, destruction, degradation, corruption, malfunction, compromise or loss of access to a **covered electronic system**;
   c. unintentional transmission of malicious computer code to another party from a **covered electronic system**; or
   d. unintentional act, error or omission made by the **company's** authorized personnel in the course of their duties, in connection with the creation, development, modification or implementation of any set of instructions to direct the operations and function of the **company's covered electronic systems**.  For the purposes of this definition "authorized personnel" means **officers**, **employees**, **service providers**, subcontractors and consultants as long as they are acting within the scope of their engagement by the **company**.

J. **Electronic publishing act** means any actual or alleged:
   a. libel or slander resulting from the electronic publishing of material that defames a person or organization or disparages the goods, products or services of a person or organization;
   b. plagiarism, false light or false advertising, resulting from electronic publishing activities;
   c. violation of the right of privacy or right of publicity of any person or organization by the electronic publishing of material that publicly discloses private facts or commercially appropriates the name or likeness of such person or organization;
   d. infringement of a copyright, title, trademark, trade dress, trade name, service mark, service name or slogan via electronic publishing activities; or
   e. unauthorized use of titles, formats, performances, style, characters, plots or other protected material via electronic publishing activities.

K. **Employee** means any natural person, including a leased employee, who is a past, present or future employee of the **company** or, only with respect to the Fiduciary Liability Insuring Agreement, of a **plan**, and who is not a **director** or **officer**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal or temporary employee, acting in their capacity as such. **Employee** includes any natural person who volunteers their services to the **company**.  **Employee** does not include independent contractors.

L. **Employment practices act** means any actual or alleged:

a.  violation of any federal, state, provincial or local statutory law, common law or civil law prohibiting discrimination of any kind;
b.  harassment, including any type of sexual, workplace, religious, racial, sexual orientation, pregnancy, disability, age, or national origin-based harassment;
c.  an act that creates an abusive or hostile work environment, whether based on gender, religion, age, disability, race, national origin, pregnancy, marital status, sexual orientation or other legally protected status;
d.  wrongful discharge or termination, whether actual or constructive;
e.  wrongful failure or refusal to hire;
f.  failure or refusal to provide equal treatment or opportunities;
g.  defamation, libel, slander, disparagement or invasion of privacy;
h.  wrongful failure or refusal to promote, including wrongful failure to train, advance or grant bonuses or perquisites;
i.  wrongful demotion;
j.  negligent hiring or negligent supervision of others;
k.  failure or refusal to adopt or enforce adequate workplace or employment practices, policies or procedures;
l.  wrongful excessive or unfair discipline;
m.  wrongful infliction of emotional distress;
n.  retaliation, including retaliation for exercising protected rights, supporting in any way another's exercise of protected rights, participating in strikes or lockouts, threatening or actually reporting wrongful activity of an **insured**, including violation of any federal, state, provincial, or local "whistle blower" or similar law;
o.  bullying in the workplace; or
p.  any other wrongful employment related practice
related to the actual or prospective employment of any person by the **company**.

**M.  ERISA** means the Employee Retirement Income Security Act of 1974, as amended, any similar common or statutory law anywhere worldwide, and any rules or regulations promulgated under any such act or laws.

**N.  Executive officer** means the chairperson, president, chief executive officer, chief operating officer, chief financial officer or in-house general counsel of the **company**, the trustees of any **plan** or with respect to a company formed outside the United States of America, any equivalent executive position.

**O.  Fiduciary act** means any actual or alleged breach of the responsibilities, obligations or duties imposed upon any **insured** in its capacity as a fiduciary of any **plan** by any common or statutory law of the United States of America or any other jurisdiction anywhere in the world, and any negligent act, error or omission in the **administration** of a **plan**.

**P.  Financial impairment** means the status of the **company** resulting from the appointment by any state, provincial or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **company**, or the **company** becoming a debtor in possession.

**Q.  Insured** means **directors, officers**, **employees**, the **company**, and, only with respect to the Fiduciary Liability Insuring Agreement, the **plans**, to the extent such person or entity is covered under an insuring agreement.

**R.  Insured persons** means **directors, officers** and **employees** to the extent such person is covered under an insuring agreement.

**S.  Interrelated wrongful acts** means **wrongful acts** that have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events, or transactions.

**T.  IRA/Keogh/Health Savings Account act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by a **director, officer** or **employee** or the **company** in their capacity as a trustee of an Individual Retirement Account (IRA), H.R. 10 (Keogh) Plan or Health Savings Account.

**U. Lending act**, means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by a **director, officer**, **employee** or the **company**, in connection with or relating to:
   a.  an agreement to or refusal to grant or extend a loan, lease or extension of credit;
   b.  the granting or extending of a loan, lease or extension of credit;
   c.  loan servicing, including the servicing of loans for others under a contract or agreement; or
   d.  the restructure, termination, transfer, repossession or foreclosure of a loan, lease or extension of credit.

**V.  Loss** means any amount which an **insured** becomes legally obligated to pay as a result of a **claim**, including punitive, exemplary or multiple damages in excess of actual damages (except where uninsurable by law), judgments, settlements, pre-judgment and post-judgment interest, and reasonable **defense expenses**; however **loss** does not include:
   a.  any unrepaid, unrecoverable or outstanding loan, lease or extension of credit;
   b.  any costs incurred to comply with any injunctive or nonmonetary relief or any agreement to provide such relief; or
   c.  matters uninsurable under the law pursuant to which this policy is construed.

   Where an **insured** reasonably determines that punitive, exemplary or multiple damages are insurable under the applicable law, the Insurer shall not challenge that interpretation of insurability.

**W. Management practices act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any **director** or **officer** in their capacity as such, other than a **fiduciary act**, **IRA/Keogh/Health Savings Account act**, **employment practices act**, **third party harassment act**, **electronic banking act**, **electronic publishing act**, **security breach** or **trust act.  Management practices act** does not include any conduct actually or allegedly committed or attempted by a **director** or **officer** in their capacity as a director, officer, employee, trustee, governor, member of the board of managers, or any equivalent position of any entity other than the **company**, even if service in such capacity is with the knowledge and consent of, at the direction or request of the **company**, or is part of the duties regularly assigned to the **director** or **officer** by the **company**, except in their capacity in an **outside position**.

**X.  Negative publicity** means information associated with or resulting from a **wrongful act** which is publicized through newspapers, radio, television, blogs, websites or comparable print, broadcast, or electronic media that has caused or is likely to cause a decline or deterioration in the **company's** business reputation or which, in the opinion of a public relations consultant, is likely to be so publicized to the detriment of the **company's** business reputation.

**Y.  Non-profit entity** means any non-profit corporation, entity, community chest, fund or foundation that is exempt from federal income tax as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

**Z.  Non-discretionary investment** means an investment or transaction made at the specific direction or approval of a customer of the **company**, and in no event shall include any decision made pursuant to discretionary authority granted to an **insured**, even if such authority is subject to investment guidelines or general investment parameters or instructions.

**AA.Outside position** means the position of director, officer, manager, trustee, volunteer or other equivalent position held by any **director** or **officer** in a **non-profit entity** not included in the definition of **company**; if service in such position is with the knowledge or consent of, at the direction or request of, or part of the duties regularly assigned to the **director** or **officer** by the **company**.

**BB.Parent company** means the entity first named under **Company** in the Declarations.

**CC.Plan** means:
   a.  any employee benefit plan (as defined by **ERISA**) which is operated solely by the **company**, or jointly by the **company** and a labor organization, for the benefit of the **employees** or **officers**, if such plan existed before the **policy period** or is afforded coverage pursuant to the Changes in Exposure section;

b.  any other employee benefit plan not subject to Title 1 of **ERISA** sponsored solely by the **company** for the benefit of the **employees** or **officers**, if such plan existed before the **policy period** or is afforded coverage pursuant to the Changes in Exposure section;

c.  any other employee benefit plan if listed as a **plan** in an endorsement to this policy;

d.  any other plan or program described in (a) or (b) above while such plan or program is actively being developed, formed or proposed by the **company** prior to the formal creation of such plan or program; or

e.  any government-mandated benefit program for workers compensation, unemployment, social security or disability benefits for **employees** or **officers**;

provided that **plan** shall not include any multi-employer plan or employee stock ownership plan unless such plan is specifically listed as a **plan** in an endorsement to this policy.

DD. **Policy period** means the period of time shown as such in the Declarations.

EE. **Policy year** means:

a.  the period of one year following the inception date of the **policy period** or any anniversary thereof;

b.  if the time between the inception date of the **policy period** or any anniversary thereof, and the termination of this policy, is less than one year, then such lesser period;

c.  if coverage is provided under an insuring agreement after the inception date of the **policy period** and the time between the inception date of such insuring agreement and the anniversary of this policy is less than one year, then such lesser period with respect to such insuring agreement; or

d.  if coverage is provided under an insuring agreement after the inception date of the **policy period** and the time between the inception date of such insuring agreement and the termination of this policy is less than one year, then such lesser period with respect to such insuring agreement.

FF. **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States of America Environmental Protection Agency or a state, country, municipal or local counterpart thereof.  Such substances shall include solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials.  **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, lead or lead products, electric or magnetic or electromagnetic field and noise.

GG. **Professional and depository services** means those services provided for or on behalf of customers of the **company**, other than:

a.  lending services

b.  services performed by any entity as to which the **company** shall have acquired ownership or control as security for a loan, lease, or other extension of credit;

c.  medical or health care services;

d.  architectural or construction management services;

e.  the rental of a safe deposit box;

f.  legal, actuarial or accounting services other than those performed for the **company**; or

g.  the designing, building, or maintenance of any website or the content of any website for an entity other than the **company**.

HH. **Professional and depository services act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by an **insured** in the rendering or failure to render **professional and depository services** other than a **securities act**, **lending act**, **fiduciary act**, **IRA/Keogh/Health Savings Account act**, **employment practices act**, **third party harassment act**, **electronic banking act**, **electronic publishing act**, **security breach**, or **trust act**

II. **Public relations expenses** means actual, necessary and reasonable expenses the **company** incurs in retaining a public relations consultant to protect or restore the **company's** business reputation in response to **negative publicity,** or in planning, implementing, executing and managing a public relations campaign under the direction of a public relations consultant to counter or minimize any actual or anticipated adverse effects of **negative publicity**.

**JJ. Rewards** means any amount paid by the **company** for information that leads to the arrest and conviction of any individual committing or trying to commit an illegal act related to an **electronic banking act** or **security breach** that occurs during the **policy period**.

**KK. Retroactive date** means the date shown as such in the Declarations.  If "none" is entered in the space provided for the **retroactive date**, then no retroactive date applies to this policy.

**LL. Securities act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by a **director**, **officer**, **employee** or the **company** involving the sale or purchase of, or offer to sell or purchase debt or equity securities issued by the **company.**

**MM. Securities offering** means any public or private offering of equity or debt securities issued by the **company**, including an initial public offering.

**NN. Security breach** means the unauthorized access to the private or confidential information of any of the **company's** customers, **directors**, **officers** or **employees** while such information is in the **company's** care, custody or control other than through an **electronic banking act**.

**OO.** **Security breach expenses** means reasonable expenses incurred by the **company** as the result of a **security breach** or an **electronic banking act**.  **Security breach expenses** include but are not limited to the cost to notify affected customers, **directors**, **officers**, or **employees**, change account numbers, reissue debit or credit cards, and provide one year of basic credit monitoring to affected persons.  **Security breach expenses** shall not include any costs or expenses associated with upgrading, maintaining, or improving any computer system or any wages paid to **employees** or **officers**, except overtime wages paid to **employees** or **officers** while working solely in an effort to investigate and prevent such unauthorized access.

**PP. Service provider** means any entity listed as such in the Declarations.

**QQ.** **Subsidiary** means any **plan** and any entity in which the **company** at the inception of the **policy period**, either directly or through a subsidiary:
   a.  owns more than 50% of the voting stock;
   b.  in the case of a limited liability company, has the right to elect, appoint or designate 50% or more of such company's managers;
   c.  in the case of a joint venture, has the right to elect, appoint or designate more than 50% of such joint venture's directors, trustees or other equivalent; and
   d.  in the case of any **non-profit entity** or political action committee, has the right to elect or otherwise appoint more than 50% of such entity's directors or trustees, or political action committee's members.

**RR. Third-party harassment act** means any actual or alleged:
   a.  violation of any federal, state, provincial or local statutory law, common law or civil law prohibiting discrimination of any kind;
   b.  harassment, including any type of sexual, religious, racial, sexual orientation, pregnancy, disability, age, or national origin-based harassment;
   c.  defamation, libel, slander, disparagement or invasion of privacy;
   d.  false arrest, false imprisonment or malicious prosecution; or
   e.  bullying
of a natural person other than an **employee**, **officer or director** and other than as a part of a **lending act**.

**SS. Trust act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by an **insured** in their capacity as:
   a.  administrator of a decedent's estate, executor or trustee under a will or personal or corporate trust agreement;
   b.  conservator or guardian of any person;
   c.  representative of any person lawfully vested with any trust powers;
   d.  interest or dividend disbursing agent, transfer or paying agent, fiscal agent, registrar of securities, agent for voting trustees, warrant agent, depositor or agent for a committee of holders of securities, sinking fund agent, escrow agent, tax withholding agent, exchange agent, redemption or subscription agent or trustee agent or trustee under a corporate bond indenture; or

STAR 00023

e.   trustee exercising any other trust or fiduciary powers permitted by law other than an **IRA/Keogh/Health Savings Account act** or a **fiduciary act**.

TT. **Voluntary compliance program** means the Voluntary Compliance Resolution ("VCR") Program or the Walk-In Closing Agreement Program ("Walk-in CAP"), both as described in the Employee Plans Compliance Resolution System ("EPCRS"), IRS Rev. Proc. 98-22, as amended, or the Tax Sheltered Annuity Voluntary Correction Program ("TVC").

UU.**Wrongful act** means **management practices act**, **professional and depository services act**, **securities act**, **electronic banking act**, **electronic publishing act**, **employment practices act**, **fiduciary act**, **IRA/Keogh/Health Savings Account act**, **lending act**, **third-party harassment act**, **security breach** and **trust act**, but only to the extent that coverage is granted for such acts pursuant to the purchase of an insuring agreement under this policy.

**Section 3.  Exclusions Applicable to All Insuring Agreements**

The Insurer shall not be liable for **loss** in connection with any **claim**:

A.   based upon, arising out of, or attributable to any **claim** first made prior to the inception date of the **policy period**;

B.   based upon, arising out of, or attributable to any wrongful act which occurred prior to the **retroactive date**, if any;

C.   for bodily injury, sickness, disease or death of any person including any mental anguish or emotional distress associated with such bodily injury, sickness, disease or death, except for the bodily injury, sickness, disease or death caused by the mental anguish or emotional distress created by a **wrongful act**;

D.   for damage to or destruction of any tangible property including loss of use thereof;

E.   for an accounting of profits in fact made from the purchase or sale by a **director** or **officer** of securities of the **company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 or amendments thereto or similar provisions of any federal, state or local statutory law or common law;

F.   for any fraudulent, dishonest or criminal actions of an **insured** or for any deliberate omission or willful violation of or noncompliance with any statute or regulation by an **insured**.  However, an **insured** shall be indemnified for **defense expenses** as to any **claim** alleging such fraudulent, dishonest or criminal actions or deliberate omission or willful violation of or noncompliance with any statute or regulation, until a final judgment, final determination or final adjudication establishes such fraudulent, dishonest or criminal actions or deliberate omission or willful violation of or noncompliance with any statute or regulation.  In the event such fraudulent, dishonest or criminal actions or deliberate omission or willful violation of or noncompliance with any statute or regulation are established, the appropriate **insured** agrees to repay the Insurer, upon demand, all monies advanced by the Insurer in connection with such **claim**;

G.   based upon, arising out of, or attributable to any conversion of the **company** from a mutual institution to a stock institution or any reorganization of the **company** to a mutual holding company or any similar reorganization which occurs after the effective date of this policy;

H.   based upon, arising out of, or attributable to any **securities offering** which occurs after the effective date of this policy for **claims** made after 45 days from the effective date of such **securities offering**, unless the Insurer agrees to provide coverage by endorsement for **claims** made based upon, arising out of, or attributable to such **securities offering**;

I.   for an actual or alleged violation of the responsibilities, obligations or duties imposed by **ERISA** or any similar laws upon fiduciaries of any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to **employees** or **officers** of the **company**, except when covered under the Fiduciary Liability Insuring Agreement;

J.   for any **insured** gaining in fact any personal profit, remuneration or financial advantage to which such **insured** was not legally entitled;

K.   brought or maintained by or on behalf of any **insured** in any capacity, except:
   a.   a **claim** that is a derivative action brought or maintained on behalf of the **company** by one or more persons who are not a **director** or **officer** and who bring and maintain such **claim** without the solicitation, assistance or active participation of any **director** or **officer**;
   b.   a **claim** brought or maintained by a natural person who was a **director** or **officer**, but who has not served as a **director** or **officer** for at least four (4) years preceding the date the **claim** is first made, and who brings and maintains the **claim** without the solicitation, assistance or active participation of any **director** or **officer** who is serving as a **director** or **officer** or was serving as a **director** or **officer** within such four (4) year period;
   c.   a **claim** brought or maintained by or on behalf of any **director, officer** or **employee** for any **employment practices act**;
   d.   a **claim** brought or maintained by any **director, officer** or **employee** for contribution or indemnity, if the **claim** directly results from another **claim** covered under this policy;
   e.   a **claim** brought or maintained by or on behalf of any **employee** or **officer** in their capacity as an **employee** of the **company** for any **fiduciary act**;
   f.   a **claim** brought by a **director, officer** or **employee** solely in his or her capacity as a customer of the **company** for an **electronic publishing act**, an **IRA/Keogh/Health Savings Account act**, a **trust act**, a **lending act**, or a **professional and depository services act**, provided such **claim** is instigated totally independent of, and totally without the solicitation, assistance, active participation, or intervention of, any other **insured**; or
   g.   a **claim** brought by a **director, officer** or **employee** under the Electronic Banking Liability or the Security Breach - Privacy Liability Insuring Agreements**;**

L.   brought or maintained by or on behalf of any person or entity that owns, directly, indirectly or beneficially, 10% or more of the **company**;

M.   for a **wrongful act** by a **director** or **officer** in an **outside position** if such **claim** is brought or maintained by or on behalf of the entity in which the **director** or **officer** served, or by or on behalf of any director, officer, trustee, governor, or member of the board of managers, or equivalent position of such entity if any;

N.   based upon, arising out of, or attributable to:  (i) the actual, alleged or threatened discharge, release, escape, seepage, migration or disposal of **pollutants** into, in or on real or personal property, water or the atmosphere; or (ii) any direction or request that the **insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants**, or any voluntary decision to do so; provided this exclusion shall not apply to the Employment Practices Liability Insuring Agreement;

O.   for any **wrongful act** committed or attempted or allegedly committed or attempted by any **subsidiary** or any **employee**, **director** or **officer** of such **subsidiary** during any time when such entity is not a **subsidiary** of the **company**.

P.   for false arrest, detention or imprisonment, malicious prosecution, wrongful entry, wrongful eviction, invasion of the right of private occupancy, discrimination, libel, slander, disparagement, or violation of a person's or organization's right of privacy or publicity right; except when covered under the Employment Practices Liability, Third Party Harassment Liability, Electronic Banking Liability, Electronic Publishing Liability or Security Breach Privacy Liability Insuring Agreements;

Q.   for the actual or alleged liability of any **insured** under any oral, written or implied contract or agreement, regardless of whether such liability is direct or assumed; provided this exclusion shall not apply to:
   a.   the extent that the **insured** would have been liable in the absence of the contract or agreement;
   b.   any **claim** against an **insured** by a customer of the **company**, if and to the extent that such **claim** alleges a breach of contractual obligations in the rendering of or failure to render **professional and depository services**;
   c.   any **claim** against an **insured**, if and to the extent that such **claim** alleges a breach of contractual obligations in a **lending act**;

STAR 00025

d. the liability was assumed in accordance with or under the trust agreement or equivalent document pursuant to which a **plan** was established;

e. severance pay owed pursuant to a settlement agreement in a **claim** for **loss** otherwise covered under the Employment Practices Insuring Agreement, if the Insurer consents to the inclusion of such severance pay in such settlement agreement; or

f. any **claim** against an **insured** by a customer of the **company**, if and to the extent that such **claim** alleges a breach of contractual obligations in a **trust act**;

R. based upon, arising out of, or attributable to any actual or alleged obligation of an **insured** under any law governing workers compensation, unemployment, social security, disability, medical, insurance, pension or retirement benefits except when covered under the Fiduciary Liability or Employment Practices Liability Insuring Agreements;

S. based upon, arising out of, or attributable to any actual or alleged infringement or violation of any intellectual property rights or laws, including copyright, title, slogan, service mark, service name, trade dress, trade name, trade secret, or trademark; except when covered under the Electronic Publishing Liability Insuring Agreement;

T. for any act actually or allegedly committed or attempted by a **director, officer** or **employee** in their capacity as a director, officer, trustee, governor, member of the board of managers, or any equivalent position, or employee of any entity other than the **company**, even if such service is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the **director, officer** or **employee** by the **company**, except when covered under the Outside Position Liability Extension under the Directors and Officers Liability and Company Indemnification Insuring Agreements;

U. based on, arising out of, or attributable to the actual or alleged infringement of any patent, patent pending or application of a patent;

V. based on, arising out of, or attributable to any **wrongful act** or any fact, circumstance or situation that has been the subject of notice under any policy of insurance in effect prior to the inception date of this policy, or any other **wrongful act**, whenever occurring, which together with a **wrongful act** that has been the subject of such notice would constitute **interrelated wrongful acts**;

W. based on, arising out of, or attributable to any actual, alleged or threatened exposure to discharge, emission, dispersal, release, escape or disposal of nuclear reaction or radiation or radioactive contamination; or

X. based on, arising out of, or attributable to any actual or alleged exposure to: any fungus or spore; any substance, vapor or gas produced by or arising out of any fungus or spore; or any material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any fungus or spore, regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to the claimed injury or damage.  The term fungus includes, but is not limited to, any form or type of mold, mushroom or mildew.  The term spore means any reproductive body produced by or arising out of any fungus.

**Severability of Exclusions**

No fact pertaining to or knowledge possessed by a **director, officer** or **employee** shall be imputed to any other **director, officer** or **employee** for purposes of applying exclusions.  Only facts pertaining to or knowledge possessed by an **executive officer** shall be imputed to the **company** or **plan** for the purposes of applying exclusions.

**Section 4.  General Terms, Conditions and Limitations**

**Limits of Liability and Retentions**

For the purposes of this policy, all **claims** arising out of the same **wrongful act** and all **interrelated wrongful acts** shall be deemed one **claim**, and such **claim** shall be deemed to be first made against the **insureds** on the date the earliest of such **claims** is first made against them.

The Insurer shall be liable to pay that portion of **loss** (including **defense expenses**) covered under a purchased insuring agreement in excess of the applicable retention amount up to the applicable Policy Year Limit of Liability shown in the Declarations.

**Policy Annual Aggregate Limit of Liability**

The Insurer's maximum liability for **loss** as a result of all **claims** first made during the same **policy year**, including the Automatic Reporting Period or, if exercised, the Extended Reporting Period, shall be the respective amount shown in the Declarations as the Policy Annual Aggregate Limit of Liability.

**Defense expenses** shall be part of, and not in addition to, the Policy Annual Aggregate Limit of Liability, and **defense expenses** shall reduce and may exhaust such limit of liability.

**Each Insuring Agreement Policy Year Limit of Liability**

The Insurer's maximum liability for **loss** under an insuring agreement as a result of all **claims** first made during the same **policy year**, including the Automatic Reporting Period or, if exercised, the Extended Reporting Period, shall be the respective amount shown in the Declarations as the Policy Year Limit of Liability for that insuring agreement.

**Defense expenses** shall be a part of, and not in addition to, the insuring agreement's Policy Year Limit of Liability, and **defense expenses** shall reduce and may exhaust such limit of liability.

If **loss** arising from a single **claim** is covered under more than one insuring agreement, then the Insurer's maximum liability shall be limited to the highest Policy Year Limit of Liability of any insuring agreement providing coverage and only the retention of that insuring agreement shall apply.  However this provision shall not apply to the Security Breach Expenses, Public Relations Expenses and Rewards Insuring Agreements.

All **claims** that are made and reported to the Insurer during the **policy period** or the Automatic Reporting Period or, if exercised, the Extended Reporting Period, and that involve the same **wrongful act** or **interrelated wrongful acts** of one or more **insured person(s)** shall be deemed to have been made solely within the earliest of the following **policy years**:
  a.  the **policy year** in which the earliest **claim** involving the same **wrongful act** or **interrelated wrongful acts** is first made, or
  b.  the **policy year** in which the **claim** involving the same **wrongful act** or **interrelated wrongful acts** shall be deemed to have been made pursuant to the second paragraph under **Notice**, if applicable.

In the event that more than one **insured** is included in the same **claim**, the total amount of the available limit of liability shall be apportioned in proportion to their respective **loss** and the retention shall be apportioned pro rata among the **insureds**, unless otherwise mutually agreed upon by the **insureds** and the Insurer.

**Retentions**

Except as otherwise provided in this section, the Insurer's liability with respect to **loss** arising from each **claim** shall apply only to that part of **loss** which is excess of the applicable retention shown in the Declarations, and such retention shall be borne by the **company** uninsured and at its own risk.

No retention shall apply to **loss** incurred by **insured persons** as a result of each **claim** for which the **company** is not permitted or required by law to indemnify such **insured persons** or is permitted or required to indemnify such **insured persons** but does not do so by reason of **financial impairment**.  The applicable retention shown in the Declarations shall apply to all other **loss**, including **loss** for which the **company** is permitted or required by common or statutory law to indemnify any such **insured persons**, but fails or refuses to do so for any reason other than **financial impairment**.

If **loss** arising from a single **claim** is subject to more than one retention, the applicable retention shall be applied separately to each part of such **loss**, but the largest applicable retention shall be the maximum retention applied to all **loss** arising from such **claim**.  If a single retention applies to multiple **insureds**, the retention shall be pro-rated among such **insureds**.

For purposes of this policy, the **company** agrees, to the fullest extent permitted by law, to provide indemnification and advancement to the **insured persons** for all **loss**.  The **company** will also take all steps necessary or allowable to provide such indemnification.

## Notice

The **insureds** shall, as a condition precedent to their rights under this policy, give to the Insurer written notice of any **claim** made against the **insureds** as soon as practicable, but in no event later than:  (a) sixty (60) days after expiration of the **policy year** in which the **claim** was first made; or (b) the expiration of the Automatic Reporting Period or, if exercised, the Extended Reporting Period.

If during the **policy period**, the **insureds** become aware of circumstances which could give rise to a **claim** for a **wrongful act** taking place before or during the **policy period** and give written notice of such circumstances and the other information referenced below to the Insurer during the **policy period**, then any **claims** subsequently arising from such circumstances shall be considered to have been made during the **policy year** in which such notice of such circumstances and such other information was first given to the Insurer.

The **insureds** shall, as a condition precedent to exercising their rights under this policy:  (a) include within any notice of **claim** or circumstances, the nature of the alleged **wrongful act**, the nature of the alleged or potential damage, the names of actual or potential claimants and **insureds** involved, and the manner in which the **insureds** first became aware of the **claim** or circumstances; and (b) give to the Insurer such other information and cooperation as the Insurer may reasonably request.

All notices under any provision of this policy shall be in writing and given by prepaid express courier, certified mail, fax or email properly addressed to the appropriate party.  Notice to the **insureds** may be given to the **parent company** at the address shown in the Declarations.  Notice to the Insurer of any **claim** or circumstance shall be given to the entity and address designated for the receipt of such in the Declarations.  All other notices to the Insurer under this policy shall be given to the entity and address designated for the receipt of such in the Declarations.  Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or one (1) day following the date such notice is sent, whichever is earlier.  However, the provisions of this paragraph are superseded by any applicable provisions in any state laws, rules or regulations with respect to policy cancellation, nonrenewal, or renewal.

## Priority of Payments

In the event of **loss** arising from a **claim** for which payment is due under the provisions of this policy and which **loss** exceeds or may exceed the remaining limits of liability available under this policy, the Insurer shall first make payment for such **loss** under Insuring Agreement A for such **claim**, then pay for such loss for which coverage is provided under Insuring Agreement B, and lastly pay for such **loss** for which coverage is provided under the other insuring agreements of this policy.  The Insurer shall give priority to and first pay or indemnify on behalf of **insured persons** the **loss** covered under any of the insuring agreements of this policy and only to the extent that any limits of liability remain, will the Insurer make payment to or on behalf of the **company**.  This provision for the priority of the Insurer's payments for **loss** does not increase the applicable Policy Year Limit of Liability for any or all **claims** made during the **policy period**.

## Defense and Settlement

The **insureds** agree not to settle or offer to settle any **claim**, incur any **defense expenses** or otherwise assume any contractual obligation, admit any liability, voluntarily make any payment or confess or otherwise agree to any damages or judgments with respect to any **claim** covered by this policy without the Insurer's written consent, which shall not be unreasonably withheld.  The Insurer shall not be liable for any settlement, **defense expenses**, assumed obligation, admitted liability, voluntary payment, or confessed or agreed damages or judgment to which it has not consented in writing.

The Insurer shall be entitled to full cooperation and all information and particulars it may reasonably request from the **insureds** in order to conduct its investigation or to reach a settlement of the **claim**.  The **insureds** agree that in the event of a **claim**, the **insureds** will do nothing that may prejudice the Insurer's position or its potential or actual rights of recovery.

The Insurer may, with the consent of the **insured**, settle any **claim** for any monetary amount that the Insurer deems reasonable.  If an **insured** withholds consent to such settlement, the Insurer's liability for all **loss** arising from such **claim** shall not exceed:

a. the amount for which the Insurer could have settled such **claim**; plus
b. **defense expenses** incurred as of the date such settlement was proposed in writing by the Insurer to the **insured**; plus
c. 50% of the covered **loss**, including **defense expenses** incurred after the date such settlement was proposed in writing by the Insurer to the **insured**, in excess of the amount for which the Insurer could have settled such **claim**.

Notwithstanding the foregoing, if the proposed settlement amount does not exceed the applicable retention shown in the Declarations, subpart c above shall not apply and the Insurer's liability for all **loss** arising from such **claim** shall not exceed the amount for which the Insurer could have settled such **claim** plus **defense expenses** incurred as of the date such settlement was proposed in writing by the Insurer to the **insured**.  Any amounts paid by the Insurer under subparts a, b or c above shall be part of and not in addition to the applicable limits of liability shown in the Declarations.

The Insurer and the **insureds** shall not unreasonably withhold any consent referenced in this Defense and Settlement section.

The Insurer shall have the right to appeal any judgment with respect to any **claim** covered, in whole or in part, by this policy and the expense of appealing such judgment shall be a part of **defense expenses**.

**Duty of the Insureds to Defend**

It shall be the duty of the **insureds** to select defense counsel, which shall be subject to the approval of the Insurer, and to defend any **claim** covered under this policy.

With respect to any **claim** submitted for coverage, the Insurer shall have the right and shall be given the opportunity to effectively associate with, and shall be consulted in advance by, the **insureds** regarding:  (a) the selection of appropriate defense counsel; (b) substantive defense strategies, including decisions regarding the filing and content of substantive motions; and (c) settlement negotiations.

Subject to the Allocation section, the Insurer shall advance, on behalf of the **insureds**, **defense expenses** which the **insureds** have incurred in connection with **claims** made against them, before disposition of such **claims**, provided that to the extent that it is finally established that any such **defense expenses** are not covered under this policy, the **insureds**, severally according to their respective interests, agree to repay the Insurer such **defense expenses**.

<u>**Allocation**</u>

If in any **claim** the **insureds** who are afforded coverage for such **claim** incur **loss** jointly with others (including **insureds**) who are not afforded coverage for such **claim**, or incur an amount consisting of both **loss** covered by this policy and **loss** not covered by this policy because such **claim** includes both covered and uncovered matters, the Insurer will pay 100% of **defense expenses** incurred only by the **insureds**, in excess of any applicable retention, as a result of such **claim** and, with respect to any settlement, judgment or other loss, then the **insureds** and the Insurer shall allocate such amount between covered **loss** and uncovered **loss** based upon the relative legal and financial exposures of the parties to covered and uncovered matters and, in the event of a settlement, based also upon the relative benefits to the parties from settlement of the covered and uncovered matters.

If **defense expenses** arising from a single **claim** are incurred and covered under more than one insuring agreement made part of this policy, such **defense expenses** shall be allocated to each applicable insuring agreement.

STAR 00029

**Other Insurance**

If any **loss** arising from any **claim** made against any **insured** is covered under any other valid insurance, prior or current, whether collectible or not, then this policy shall cover such **loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **loss** is in excess of the amount of such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the limits of liability provided in this policy.  However, if such other insurance is provided by the Insurer or any company affiliated with the Insurer or with W. R. Berkley Corporation, our maximum limit of liability under all such coverage forms and policies shall not exceed the limit of liability provided under the coverage form or policy providing the highest applicable limit of liability.  In no event will coverage under this policy be excess over or be added to the limit of liability under any other coverage form or policy issued by the Insurer or any company affiliated with the Insurer or with W. R. Berkley Corporation.  This condition does not apply to any coverage form or policy issued to an **insured** by the Insurer or any company affiliated with the Insurer or with W. R. Berkley Corporation, which specifically applies as excess insurance over this policy.


**Changes in Exposure**

**Acquisition or Creation of an Entity or Plan**

If during the **policy period** the **company**:
  a.  acquires securities in another entity or creates another entity, which as the result of such acquisition or creation becomes a **subsidiary**;
  b.  acquires any entity by merger into or consolidation with the **company**;
  c.  creates a **plan**; or
  d.  acquires a **plan** through merger into or consolidation with the **company**,
such entity, or **plan**, and its **insured persons** shall be covered under this policy as follows:

If the fair value of all cash, securities, assumed indebtedness and other consideration paid by the **company** for any such creation or acquisition is less than 25% of the combined total assets of the **company** and if the acquired or created entity does not render any professional services or does not conduct any type of business which is not already offered by the **company**, as reflected in the **company's** most recent financial statements as of the inception of the **policy period**, such entity, and its **insured persons** shall automatically be covered under this policy, but only for **claims** made for **wrongful acts** taking place after such creation or acquisition, unless the Insurer agrees to provide coverage by endorsement for **wrongful acts** taking place before such creation or acquisition.

If the assets of the acquired or created **plan**, is less than 25% of the total assets of all of the **plans**, as reflected in the **plans'** most recent financial statements as of the inception of the **policy period**, such entity, or **plan**, and its **insured persons** shall automatically be covered under this policy, but only for **claims** made for **wrongful acts** taking place after such creation or acquisition, unless the Insurer agrees to provide coverage by endorsement for **wrongful acts** taking place before such creation or acquisition.

With respect to all other creations or acquisitions described in subparts a, b, c or d above, such entity, or **plan**, and its **insured persons** shall automatically be covered under this policy, but only for ninety (90) days or the remainder of the **policy period**, whichever is less, following the effective date of such creation or acquisition, and only for **claims** made for **wrongful acts** taking place after such creation or acquisition, unless the Insurer agrees, by endorsement to extent the period of coverage and/or to provide coverage for **wrongful acts** taking place before such creation or acquisition.

The Insurer has the right to subject any further extensions of coverage to review of whatever information the Insurer deems appropriate and to premium and coverage considerations.

Notwithstanding the foregoing, no coverage shall be afforded by this subsection with respect to any multi-employer plan or employee stock ownership plan (as defined in ERISA) unless such coverage is specifically granted by endorsement to this policy.

**Cessation of Business or Reorganization**

If during the **policy period**:
   a.  the **parent company** merges into or consolidates with another entity and the **parent company** is not the surviving entity; or
   b.  another entity or person, or a group of entities or persons acting in concert, acquires the right to elect or otherwise appoint more than 50% of the directors, or members of the board of managers of the **parent company**; or
   c.  the **company** completely ceases to engage in its primary business; or
   d.  there is an appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **parent company**; or
   e.  the **parent company** becomes a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country,
then coverage under this policy shall continue until the end of the **policy year** in which such event as described above took place, but only for **claims** made for **wrongful acts** that occurred prior to such event.  This policy shall be deemed cancelled as of the end of the **policy year** in which such event as described above took place, and the **company** and **insured persons** shall have the right to purchase an Extended Reporting Period.

**Cessation of Subsidiaries or Plans**

If after the inception date of this policy or any policy of which this policy is a renewal, any **subsidiary** or **plan** is sold, dissolved or terminated, then coverage under this policy shall continue for **claims** made for **wrongful acts** which occurred prior to such sale, dissolution or termination.  However, coverage shall cease as of the date of such sale, dissolution or termination for **claims** made for **wrongful acts** which occurred after such sale, dissolution or termination.

**Representations and Severability**

In granting coverage under this policy, the Insurer has relied upon the statements and representations in the **application**.  The **insureds** represent that all such statements and representations are true.  All such statements and representations shall be deemed material to the acceptance of the risk and/or the hazard assumed by the Insurer under this policy.  This policy is issued in reliance upon the truth thereof.

The **insureds** agree that in the event that any such statements and representations are untrue, this policy shall not afford any coverage with respect to any of the following **insureds**:
   a.  any **insured person** who knew that the facts were not truthfully disclosed in the **application**;
   b.  the **company**, under the Company Indemnification Insuring Agreement, to the extent that it indemnifies any **insured person** referenced in a above;
   c.  the **company**, if any **executive officer** knew that the facts were not truthfully disclosed in the **application**.

**Territory and Valuation**

All premiums, limits, retentions, **loss** and other amounts under this policy are expressed and payable in the currency of the United States of America.  If judgment is rendered, settlement is denominated or another element of **loss** under this policy is stated in a currency other than United States of America dollars, payment under this policy shall be made in United States of America dollars at the rate of exchange published in The Wall Street Journal on the date the final judgment is reached, the amount of the settlement is agreed upon or the payment of other element of **loss** is due, respectively.

Coverage under this policy shall extend to **wrongful acts** taking place or **claims** made anywhere in the world.

**Subrogation**

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the **insured's** rights of recovery, including the **insured person's** rights to indemnification or advancement from the

STAR 00031

**company**.  The **insureds** shall execute all papers required and shall do everything necessary to secure and preserve all rights of recovery, including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the **insureds**.

## Recoveries

Recovery of any **loss** paid under this policy, whether such recovery is effected by the Insurer or the **insureds**, less the costs of recovery, shall be distributed first to the **insureds** for any amounts which are in excess of the limits of liability of this policy and would have otherwise been covered by this policy, next to the Insurer for the amount of such **loss** paid hereunder, next to the **insureds** for any retention or coinsurance percentage applicable to such **loss**, and lastly to the **insureds** for the amount of such **loss** excluded, or otherwise not covered, under this policy. Recovery by the Insurer from reinsurance or indemnity shall not be a recovery hereunder.

## Action Against the Insurer

No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy.  No person or entity shall have any right under this policy to join the Insurer as a party to any action against **insureds** to determine the **insured's** liability, nor shall the Insurer be impleaded or otherwise brought into any action against the **insureds** by the **insureds** or their legal representatives. Bankruptcy or insolvency of the **insured** or of the estate of any **insured person** shall not relieve the Insurer of its obligations, nor deprive the Insurer of its rights or defenses, under this policy.

## Authorization

By acceptance of this policy, the **parent company** agrees to act on behalf of the **insureds** with respect all matters under this policy, including, but not limited to the giving and receiving of notice of **claim** or termination of this policy, the payment of premiums and the receiving of any return premiums that may become due under this policy, the agreement to and acceptance of endorsements, and the giving or receiving of any other notice provided for in this policy (except the giving of notice to apply for the Extended Reporting Period), and the **insureds** agree that the **parent company** shall act on their behalf in such respects.

## Alteration and Assignment

No change in, modification of, or assignment of interest under this policy shall be effective except when made by a written endorsement to this policy that is issued by the Insurer.

## Arbitration

Only if requested by the **insureds**, the Insurer shall submit any dispute, controversy or **claim** arising out of or relating to this policy or the breach, nonrenewal, termination or invalidity of this policy to final and binding arbitration pursuant to such rules and procedures as the parties may agree.  If the parties cannot so agree, the arbitration shall be administered by the American Arbitration Association in accordance with its then prevailing commercial arbitration rules.  The arbitration panel shall consist of one arbitrator selected by the **insureds**, one arbitrator selected by the Insurer, and a third independent arbitrator selected by the first two arbitrators.  In any such arbitration, each party will bear its own legal fees and expenses.

## Liberalization

Should the Insurer adopt, within sixty (60) days prior to or within the **policy period**,  a new policy form that would broaden the coverage provided under this policy without any additional premium charge, such broadened or extended coverage shall automatically inure to the benefit of the **insured**.

## Cancellation or Nonrenewal

This policy may be cancelled by the **parent company** for itself or as agent for any **insured** by sending written notice to the Insurer at the appropriate address shown in the Declarations.  Such notice shall state when (no more than fourteen (14) days prior to the mailing or delivery of such notice) such cancellation shall be effective.

This policy may be cancelled by the Insurer mailing or delivering to the **parent company**, at the address shown in the Declarations, written notice of cancellation at least:
   a.   ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or
   b.   ninety (90) days before the effective date of cancellation if the Insurer cancels for any other reason.
Notice of cancellation will state the effective date of cancellation and the **policy period** will end on that date.  If the notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

If this policy is cancelled, the Insurer will send the **parent company** any premium refund due.  If the Insurer cancels the refund will be pro rata.  If the **parent company** cancels, the refund will be computed at 90% of pro rata.  The cancellation will be effective even if the Insurer has not made or offered a refund.

If the Insurer intends to not renew this policy, the Insurer will mail or deliver to the **parent company**, at the address shown in the Declarations, written notice of its intent to not renew this policy at least sixty (60) days before such termination of coverage is effective.  If any law specifies that a different time period of notice be given, then this provision is amended to conform with such law.


## Section 5.  Extensions


## Estates and Legal Representatives

This policy shall afford coverage for **claims** for the **wrongful acts** of **insured persons** made against the estates, heirs, legal representatives or assigns of **insured persons** who are deceased or against the legal representatives or assigns of **insured persons** who are incompetent, insolvent or bankrupt to the extent that in the absence of such death, incompetence, insolvency or bankruptcy, such **claims** would have been covered by this policy.


## Spousal and Domestic Partner Liability

If a **claim** against an **insured person** includes a **claim** against the **insured person's** lawful spouse or **domestic partner** solely by reason of such spouse's or **domestic partner's**:
   a.   legal status as a spouse or **domestic partner** of such **insured person**; or
   b.   ownership interest in property which the claimant seeks as recovery for alleged **wrongful acts** of the **insured person**,
all **loss** which such spouse or **domestic partner** becomes legally obligated to pay by reason of such **claim** shall be treated as the **insured person's loss** as a result of the **claim** made against such **insured person**.  All terms and conditions of this policy, including the retentions, shall apply to all such **loss**.

The coverage extension afforded by this Spousal and Domestic Partner Liability subsection does not apply to the extent that the **claim** alleges any error, misstatement, misleading statement, act, omission, neglect, breach of duty, or other conduct committed or attempted by the **insured person's** spouse or **domestic partner**.


## Automatic Reporting Period

If the **insureds** or the Insurer nonrenews or cancels this policy, except for cancellation due to non-payment of premium, coverage provided under this policy shall be automatically extended for the period of sixty (60) days following the effective date of such non-renewal or termination, (herein called the "Automatic Reporting Period"), but only with respect to a **wrongful act** otherwise covered thereunder taking place before the effective date of such nonrenewal or termination.  Any **claim** made during the Automatic Reporting Period shall be deemed to have been made during the **policy year** immediately preceding the Automatic Reporting Period.

STAR 00033

The Insurer's maximum liability for **loss** as a result of all **claims** first made during the **policy year** immediately preceding the Automatic Reporting Period and the Automatic Reporting Period shall be the respective amount shown in the Declarations as the Policy Annual Aggregate Limit of Liability.  The Insurer's maximum liability for **loss** under an insuring agreement as a result of all **claims** first made during the **policy year** immediately preceding the Automatic Reporting Period and the Automatic Reporting Period shall be the respective amount shown in the Declarations as the Policy Year Limit of Liability for that insuring agreement.

**Extended Reporting Period**

If the **insureds** or the Insurer nonrenews or cancels this policy, except for cancellation due to non-payment of premium, or if the policy is canceled due to the Cessation of Business or Reorganization section, the **insureds** shall have the right, upon payment of the additional premium described below, to an extension of the coverage granted under this policy for the period shown as the "Extended Reporting Period" in the Declarations following the effective date of such nonrenewal or cancellation, but only with respect to a **wrongful act** otherwise covered thereunder taking place before the effective date of such nonrenewal or cancellation.  This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is given by the **insureds** to the Insurer within sixty (60) days following the effective date of nonrenewal or cancellation.  If this right to an Extended Reporting Period is exercised, then such Extended Reporting Period shall run concurrently with the Automatic Reporting Period.

Any **claim** made during the Extended Reporting Period shall be deemed to have been made during the **policy year** immediately preceding the Extended Reporting Period.  The Insurer's maximum liability for **loss** as a result of all **claims** first made during the **policy year** immediately preceding the Extended Reporting Period and the Extended Reporting Period shall be the respective amount shown in the Declarations as the Policy Annual Aggregate Limit of Liability.  The Insurer's maximum liability for **loss** under an insuring agreement as a result of all **claims** first made during the **policy year** immediately preceding the Extended Reporting Period and the Extended Reporting Period shall be the respective amount shown in the Declarations as the Policy Year Limit of Liability for that insuring agreement.

The premium due for the Extended Reporting Period shall equal that percent shown in the Declarations of the annualized premium for this policy, for the last **policy year** prior to such nonrenewal or cancellation, including the fully annualized amount of any additional premiums charged by the Insurer for or during such **policy year**.  The entire premium for the Extended Reporting Period shall be deemed fully earned and non-refundable upon payment. If the right to an Extended Reporting Period is properly exercised in accordance with the preceding paragraph, then such Extended Reporting Period may not be cancelled.

In witness whereof, the Insurer has caused this policy to be executed on the Declarations page.

Excess Directors and Officers Liability Endorsement

To be attached to and form part of Policy No.:     MLP 6014300-11                    Effective:   11/28/2016

It is agreed that:

1.      The attached policy is amended by adding the following Insuring Agreement:

**Excess Directors and Officers Liability**

The Insurer shall pay on behalf of the **directors** and **officers**, **excess loss** for which the **directors** and **officers** are not indemnified by the **company** due to a **proper reason** and for which the **directors** and **officers** become legally obligated to pay as a result of any **claim** first made against them, individually or otherwise, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for a covered **wrongful act** taking place after the **retroactive date**.

2.      The attached policy is amended by adding the following definitions:

**Excess loss** means the part of **loss** which is the result of a **claim** covered under an insuring agreement for which coverage was purchased under this policy and which exceeds the Policy Year Limit of Liability for such insuring agreement.

**Proper reason** means the following reasons for which the company does not indemnify a **director** or **officer**:
        **a.**   the **company** is not allowed or required by law to indemnify the **director** or **officer**; or
        **b.**   the **company** is not able to indemnify the **director** or **officer** due to **financial impairment**.

3.      The attached policy is amended by adding the following sentence to the third paragraph under the subtitle **Each Insuring Agreement Policy Year Limit of Liability** in Section 4:

This provision shall also not apply to the Excess Directors and Officers Liability Insuring Agreement.

4.      The Policy Year Limit of Liability of the Excess Directors and Officers Liability Insuring Agreement
      is $ 1,000,000.

Accepted:

By:  _____
                      Signature and Title

STAR 00035

IL 89 90 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

   MANAGEMENT LIABILITY POLICY
   EXCESS INSURANCE POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   **1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

STAR 00036

Missouri Amendatory Endorsement

To be attached to and form part of Policy No.:   MLP 6014300-11                   Effective:   11/28/2016

It is agreed that:

1.  Section 2 definition F is deleted and replaced with the following:

"F.  **Defense expenses** means reasonable costs, charges, fees (including attorneys' fees, experts' fees, and mediators or arbitrators' fees) and expenses (other than regular or overtime wages, salaries or fees of any **director, officer** or **employee**) incurred in defending or investigating a covered **claim** or the appeal of a covered **claim**, including the premium for appeal, attachment or similar bonds; however, **defense expenses** do not include any amount paid by any insurer pursuant to another policy of insurance under which there is a duty to defend.  The Insurer's internal expenses including, but not limited to, salaries of officers and employees do not constitute **defense expenses**, and, therefore, do not reduce the Policy Annual Aggregate Limit of Liability or any applicable Policy Year Limit of Liability."

2.  The paragraphs under the title **Cancellation and Nonrenewal** within Section 4 are deleted and inserted in lieu thereof is the following:

"This policy may be cancelled by the **parent company** for itself or as agent for any **insured** by sending written notice to the Insurer at the appropriate address shown in the Declarations.  Such notice shall state when (no more than fourteen (14) days prior to the mailing or delivery of such notice) such cancellation shall be effective.

This policy may be cancelled by the Insurer by mailing or delivering written notice to the **parent company**, stating the actual reason for cancellation, at the address shown in the Declarations, at least:
   a.  ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or
   b.  thirty (30) days before the effective date of cancellation if the Insurer cancels for:
       i.  fraud or material misrepresentation affecting this policy or a claim filed under this policy or a violation of any of the terms or conditions of this policy;
       ii.  changes in conditions after the effective date of this policy which have materially increased the risk assumed;
       iii.  the Insurer becoming insolvent; or
       iv.  the Insurer involuntarily losing reinsurance for this policy; or
   c.  sixty (60) days before the effective date of cancellation if the Insurer cancels for any other reason.

Notice of cancellation will state the effective date of cancellation and the **policy period** will end on that date.  If the notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

If this policy is cancelled, the Insurer will send the **parent company** any premium refund due.  If the Insurer cancels the refund will be pro rata.  If the **parent company** cancels, the refund will be computed at 90% of pro rata.  The cancellation will be effective even if the Insurer has not made or offered a refund.

If the Insurer intends to not renew this policy, the Insurer will mail or deliver to the **parent company**, at the address shown in the Declarations, written notice of its intent to not renew, stating the actual reason for nonrenewal, at least sixty (60) days before such termination of coverage is effective.  If the notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice."

3.  The following is added to Section 4:

"**Conditional Renewal**

If the Insurer will only renew the policy with an increase in premium of 25% or more, the Insurer must mail or deliver a premium alteration requiring notification notice to the **parent company** at least sixty (60) days prior to the expiration date of the policy except in the case of an excess policy which is contingent on the coverage of an underlying policy in which case the notice of an increase in premium of 25% or more shall be mailed or

delivered at least thirty (30) days prior to the expiration date of the policy.  Such notice shall be mailed or delivered to the agent of record and to the **parent company** at the address shown in the Declarations.  If the Insurer fails to meet this notice requirement, the **parent company** shall have the option of continuing the policy for the remainder of the notice period plus an additional thirty (30) days at the premium rate of the existing policy.  This provision does not apply if the Insurer has offered to renew a policy without such an increase in premium or if the **parent company** fails to pay a premium due or any advance premium required by the Insurer for nonrenewal.  For these purposes, "premium alteration requiring notifications" means an annual increase in premium of 25% or more, exclusive of premium increases due to a change in the operations of the **insured** which increases either the hazard insured against or the individual loss characteristics, or due to a change in the magnitude of the exposure basis, including, without limitation, increase in payroll or sales.

<u>**Right to Claim Information**</u>

If the Insurer receives a written request from the **parent company** or the **insured persons**, the Insurer will provide, within thirty (30) days of the request, the following information relating to this and any preceding policy the Insurer has issued to the **insured**:
  a.  a statement of claim history for the three (3) years prior to the date of cancellation; or
  b.  a statement of total claim history if the policy has been in effect less than three (3) years.

<u>**Missouri Property and Casualty Guaranty Association**</u>

The Insurer is a member of the Missouri Property and Casualty Guaranty Association (hereinafter known as Association).

Under Section 375.722.2(2) of the Revised Statutes of Missouri (RSMO), claims covered by the Act do not include a claim by or against an insured or an insolvent insurer if that insured has a net worth of $25 million on the date the insurer becomes insolvent.

Under Section 375.775.1(1) (RSMO), the Association's obligation includes only the amount of each covered claim which is greater than $100 and less than $300,000.  However, the Association will not:
  a.  be obligated to an insured or claimant in excess of the limits of liability of the policy from which the claim arises; or
  b.  return to the insured any unearned premium in excess of $10,000."

Multiple Year Policy Period Endorsement-Credit Union

To be attached to and form part of Policy No.:    MLP 6014300-11            Effective:    11/28/2016

It is agreed that:

1.  the Insurer has the right to assess additional premium and/or change the terms and conditions of this policy
    at any time after 365 days from the effective date of this policy if one or more of the following events
    occurs:
      a)  the Insurer has paid or reserved **loss** on **claims** made during the **policy period** which in total
          exceeds 50% of the premium paid during the **policy period**;
      b)  the **company** reports a net loss on a consolidated basis for the most recent fiscal year end;
      c)  the delinquency loan ratio of delinquent loans to total loans as calculated for the **company** as of
          the most recent quarter call report available is greater than 3%;
      d)  the ratio of net worth to total assets as calculated for the **company** as of the most recent quarter
          available call report is less than 8%; or
      e)  the receipt by an **insured** of any order from, or the entry by any **insured** into an agreement or
          memorandum of understanding with any regulatory agency.

2.  if the Insurer exercises its rights, pursuant to item 1 above, then the Insurer shall provide the **parent
    company** written notice of such additional premium to be charged and/or the changes in policy terms and
    conditions.  The **parent company** has 45 days after receipt of such written notice in which to accept the
    changes in the policy terms and conditions and to pay any additional premium assessed.  If the **parent
    company** declines to accept such changes in the policy terms and conditions or to pay any additional
    premium assessed, then this policy will be deemed to have been cancelled by the **parent company**
    effective 90 days after receipt of the written notice.


Accepted:

By:  _____
                    Signature and Title

Amend Definition of Claim Endorsement

To be attached to and form part of Policy No.:     MLP 6014300-11             Effective:    11/28/2016


It is agreed that definition C is deleted and replaced with the following:

C.  **Claim** means the following, including any appeal therefrom:
    a.  a written demand for monetary damages or non-monetary relief;
    b.  a civil proceeding commenced by the service of a complaint or similar pleading;
    c.  a notice of an arbitration proceeding or an arbitration proceeding;
    d.  an administrative or regulatory proceeding commenced by the filing of a notice of charges;
    e.  a formal investigative order or a similar legal document, except that with respect to an audit conducted by the United States of America Office of Federal Contract Compliance Programs, such proceeding shall be deemed commenced by an **insured's** receipt of a Notice of Violation or Order to Show Cause, or a written demand against an **insured** for monetary damages or non-monetary relief;
    f.  a written request to toll or waive a statute of limitations, relating to a potential **claim** described above; or
    g.  solely with respect to a **fiduciary act**, any fact-finding investigation of any **insured** by the Department of Labor or the Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States of America, however **claim** shall not include any labor, grievance, arbitration or other proceeding pursuant to a collective bargaining agreement.


Accepted:

By:  _____
                Signature and Title

Credit Union Amendatory Endorsement

To be attached to and form part of Policy No.:    MLP 6014300-11                    Effective:   11/28/2016

It is understood and agreed that:

1.   Insuring Agreements A, B, C and E in Section 1 are deleted and replaced with the following:

A.  **Directors and Officers Liability**

The Insurer shall pay on behalf of the **directors**, **officers** and **employees**, **loss** for which the **directors**, **officers** and **employees** are not indemnified by the **company** and which the **directors**, **officers** and **employees** become legally obligated to pay as a result of any **claim** first made against them, individually or otherwise, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for a **management practices act** taking place after the **retroactive date**, if any.

B.  **Company Indemnification**

The Insurer shall pay on behalf of the **company**, **loss** for which the **company** grants indemnification to a **director**, **officer** or **employee**, as permitted or required by law, and for which such **director**, **officer** or **employee** has become legally obligated to pay as a result of any **claim** first made against such **director**, **officer** or **employee** during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for a **management practices act** taking place after the **retroactive date**, if any.

**Extension - Outside Position Liability:**

Subject to all of their limitations, conditions, provisions and terms, Insuring Agreements A and B cover any **director**, **officer** or **employee** for **claims** made against them in their capacity of serving in an **outside position**.  Any such coverage shall be excess of any indemnity and insurance available from or provided by the entity in which the **director**, **officer** or **employee** serves in the **outside position**.  Payment by the Insurer, or any member company of the W.R. Berkley Corporation, under another policy for a **claim** against any **director** or **officer** in an **outside position** shall reduce, by the amount of such payment, the Policy Year Limits of Liability for Insuring Agreements A and B shown in the Declarations with respect to such **claim**.

**Extension - Investigative Costs Coverage**

Subject to all of Insuring Agreement B's limitations, conditions, provisions and terms, the Insurer shall pay up to $100,000 on behalf of the **company** reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of a **director, officer** or **employee**) incurred by the **company**, including its board of directors, board of managers or any committee thereof and incurred after written notice is provided to the insurer and consent is received from the insurer in connection with:

1.  the **company's** investigation, evaluation or response relating to a subpoena for the production of documents or records that is issued by the National Credit Union Administration or equivalent state regulator of credit unions first served on the **company** or a **director**, **officer** or **employee** during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period; or
2.  the **company's** investigation or evaluation of any written demand first made during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period against the board of directors or board of managers of the **company**, provided that such written demand is brought by a natural person without the instigation, solicitation, assistance or active participation of an **insured person**, and that such written demand is a civil proceeding in a court of law against an insured person for a covered **management practices act** taking place after the **retroactive date**, if any.

This extension of coverage shall be part of, and not in addition to, Insuring Agreement B's Policy Year Limit of Liability.

C.  **Company Professional and Depository Services Liability**

The Insurer shall pay on behalf of the **company**, **loss** which the **company** becomes legally obligated to pay as a result of any **claim** first made against it, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for a **professional and depository services act** taking place after the **retroactive date**, if any.

## Extension - Cost of Corrections Coverage

Subject to all of Insuring Agreement C's limitations, conditions, provisions and terms, the Insurer shall reimburse the **company** for the costs incurred by the **company** to mitigate or correct direct monetary damages to a customer of the **company** resulting from any **professional and depository services act** taking place after the **retroactive date**, if any and subject to the **company** obtaining the Insurer's prior written consent.

The Insurer's prior written consent is a condition precedent to the obligations of the Insurer under this extension of coverage.  Written notice received by the **company** of any circumstance which has resulted in direct monetary damages to a customer of the **company** and for which the **company** will be seeking coverage hereunder must be given to the Insurer pursuant to the Notice section of this policy's General Terms, Conditions and Limitations.

This extension of Cost of Corrections Coverage is subject to the following additional conditions:
  a.  such **professional and depository services act** must arise out of the **insured's** failure to follow directions from a customer of the **company** in connection with the **non-discretionary investment** of the customer's funds;
  b.  such **professional and depository services act** must arise in the ordinary course of the **company**'s operations and, if not mitigated or corrected, would automatically result in direct monetary damages to the customer of the **company**; and
  c.  such **professional and depository services act** would, in the absence of any mitigation or correction, result in a covered **loss** were a **claim** to be made under this Insuring Agreement.

Notwithstanding the foregoing, the Insurer has no obligation to reimburse the **company** for direct monetary damages under this extension of coverage:
  a.  if the **company**, at the effective date of this extension of coverage, had knowledge of, or could have reasonably foreseen, any circumstance which might result in a **claim**;
  b.  arising out of the wire or electronic transfer of funds;
  c.  constituting any costs, charges or expenses required to be incurred by the **company** pursuant to any contractual obligation to a customer of the **company**, if such obligation does not otherwise constitute a covered **loss** under this insuring agreement and would not otherwise exist absent such contractual obligation (such uncovered **loss** shall include, but not be limited to, the guaranteeing of any rate of return); or
  d.  for which no coverage would have been afforded under this policy had the **professional and depository services act** resulted in a **claim.**

If the Insurer determines that it lacks sufficient information to make a decision as to coverage, the **company** shall have no recourse under this policy against the Insurer until the Insurer determines that sufficient information has been provided or until an actual **claim** has been made against the **company.**

The **company** and the Insurer agree that it is their intention that coverage under this extension of coverage operates to reduce or avoid, in an expeditious and economic fashion, monetary liability from a **claim** that would have been made against the **company**, and that the coverage provided under this extension of coverage does not extend to any sum paid by the **company** that constitutes an ex-gratia settlement or a commercial settlement to support the **company's** reputation or business relationships.

In the event of coverage under this extension of coverage, the giving of the aforementioned notice of circumstances by the **company** shall be deemed to be notice of a **claim** made against the **company** at the time the notice is reported to the Insurer.  Coverage shall then apply to such **claim** subject to the terms and conditions of this policy.

This extension of coverage shall be part of, and not in addition to, Insuring Agreement C's Policy Year Limit of Liability.

STAR 00042

**Exclusions Applicable to Insuring Agreement C.**

The Insurer shall not be liable for **loss** in connection with any **claim**:
   a. based upon, arising out of, or attributable to the **company** serving as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of creditors;
   b. based upon, arising out of, or attributable to the insolvency, conservatorship, receivership, bankruptcy, or liquidation of, or financial inability to pay, or suspension of payment by, any bank or banking firm, investment company, investment bank, or any broker or dealer in securities or commodities, any insurance or reinsurance entity, or other organizations of a similar nature (including the **company**); provided, that this exclusion shall not apply to the extent such **claim** alleges a covered **professional and depository services act** solely in connection with an **insured's** investment on behalf of a customer in the stock of any of the foregoing entities;
   c. based upon, arising out of, or attributable to any dispute involving fees or charges for an **insured's** services;
   d. based upon, arising out of, or attributable to any transaction or event by or on behalf of a customer of the **company** involving:
      1) the **company's** underwriting or syndication of equity or debt securities;
      2) the **company's** investment banking activities, including the sale and distribution of a new offering of securities;
      3) the **company's** rendering advice, recommendations or services regarding any merger, tender offer, proxy contest, acquisition, restructuring, reorganization, recapitalization, divestiture, or similar transaction;
      4) the **company's** rendering of a "fairness opinion" regarding the valuation of any assets or business entity not held by an **insured** as trustee;
      5) any acquisition or sale of securities by an **insured** for such **insured's** own account; or
      6) any disclosure requirements in connection with subparts 1), 2), 3), 4) and 5) above;
   e. based upon, arising out of, or attributable to any actual conflict of interest by an **insured**, provided such **insured** in fact knew of the conflict of interest at the time the **professional and depository services act** was committed;
   f. based upon, arising out of, or attributable to safe deposit and safe keeping operations of the **company**;
   g. based upon, arising out of, or attributable to any debt unpaid or obligation unfulfilled by reason of the **company's** insolvency;
   h. based upon, arising out of, or attributable to any federal, state or local tax laws or regulations;
   i. based upon, arising out of, or attributable to the failure to collect contributions owed to an employee benefit plan or other employee program (unless such failure is the result of negligence of a **director, officer**); or
   j. based upon, arising out of, or attributable to benefits paid or payable to a participant or beneficiary of an employee benefit plan or other employee program if such benefit may lawfully be paid from the funds for the employee benefit plan or other employee program.

E.   **Company Lender Liability**

The Insurer shall pay on behalf of the **company**, **loss** which the **company** becomes legally obligated to pay as a result of any **claim** first made it, during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for a **lending act** taking place after the **retroactive date**, if any.

**Exclusions Applicable to Insuring Agreement E.**

The Insurer shall not be liable for **loss** in connection with any **claim**:
   a. based upon, arising out of, or attributable to any error, misstatement, misleading statement, act, omission, neglect or breach of duty arising out of the operation or control of any entity or property that the **company** acquired as security or collateral for any loan, lease or extension of credit;
   b. based upon, arising out of, or attributable to the **company** serving as a receiver, trustee in bankruptcy, conservator or assignee for the benefit of creditors;
   c. based upon, arising out of, or attributable to any actual conflict of interest by an i**nsured**, provided such **insured** in fact knew of the conflict of interest at the time the **lending act** was committed;
   d. based upon, arising out of, or attributable to any intentional noncompliance with a statute or regulation committed by the **company**;
   e. based upon, arising out of, or attributable to the failure to effect or maintain any insurance or bond;

f.   based upon, arising out of, or attributable to the bankruptcy of or suspension of payment by any financial institution;

g.   based upon, arising out of, or attributable to any extension of credit to any **director, officer** or **employee** or to any entity in which a **director, officer** or **employee** has a controlling interest; for the purposes of this exclusion, controlling interest means:

   1)   the ownership, control or power to vote 25% or more of any class of voting securities of the entity,
   2)   the control of the election of a majority of the directors of the entity,
   3)   the power to exercise a controlling influence over the directors and/or officers of the entity, or
   4)   the power to exercise a controlling influence over the policies adopted by the entity.

h.   based upon, arising out of, or attributable to the insolvency or bankruptcy of the **company**; or

i.   based upon, arising out of, or attributable to any extension of credit which was, at the time it was made, in excess of 110% of the legal lending limit of the **company**.

2.   Section 2 definition W is deleted and replaced with the following:

   W.   **Management practices act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any **director**, **officer** or **employee** in their capacity as such, other than a **fiduciary act**, **IRA/Keogh/Health Savings Account act**, **employment practices act**, **third party harassment act**, **electronic banking act**, **electronic publishing act**, **security breach** or **trust act**. **Management practices act** does not include any conduct actually or allegedly committed or attempted by a **director**, **officer** or **employee** in their capacity as a director, officer, employee, trustee, governor, member of the board of managers, or any equivalent position of any entity other than the **company**, even if service in such capacity is with the knowledge and consent of, at the direction or request of the **company**, or is part of the duties regularly assigned to the **director**, **officer** or **employee** by the **company**, except in their capacity in an **outside position**.

3.   Section 3 exclusion F is deleted and replaced with the following:

   F.   for any fraudulent, dishonest or criminal actions of an **insured** or for any deliberate omission or willful violation of or noncompliance with any statute or regulation by an **insured**. However, an **insured** shall be indemnified for **defense expenses** as to any **claim** alleging such fraudulent, dishonest or criminal actions or deliberate omission or willful violation of or noncompliance with any statute or regulation, until a final judgment, final determination or final adjudication establishes such fraudulent, dishonest or criminal actions or deliberate omission or willful violation of or noncompliance with any statute or regulation. In the event such fraudulent, dishonest or criminal actions or deliberate omission or willful violation of or noncompliance with any statute or regulation are established, the appropriate **insured** agrees to repay the Insurer, upon demand, all monies advanced by the Insurer in connection with such **claim**. The Insurer shall not assert that the voluntary return of money paid to an **insured person** as part of a settlement of a **claim** that alleged violations of Section 11 or Section 12 of the Securities Act of 1933 of the United States of America or any Canadian or foreign equivalent thereof as amended constitutes an admission of guilt on the part of such **insured person**, unless there is a final judgment or other final adjudication by a court, a final determination of a regulatory, administrative or other governmental body, or a written admission in such settlement by such **insured person**.;

4.   Section 3 exclusion K is deleted and replaced with the following:

   K.   brought or maintained by or on behalf of the **company** in any capacity, except:

   a.   a **claim** that is a derivative action brought or maintained on behalf of the **company** by one or more persons who are not a **director** or **officer** and who bring and maintain such **claim** without the solicitation, assistance or active participation of any **director** or **officer**;

   b.   a **claim** brought or maintained by a natural person who was a **director** or **officer**, but who has not served as a **director** or **officer** for at least four (4) years preceding the date the **claim** is first made, and who brings and maintains the **claim** without the solicitation, assistance or active participation of any **director** or **officer** who is serving as a **director** or **officer** or was serving as a **director** or **officer** within such four (4) year period;

   c.   a **claim** brought or maintained by or on behalf of any **director, officer** or **employee** for any **employment practices act**;

   d.   a **claim** brought or maintained by any **director, officer** or **employee** for contribution or indemnity, if the **claim** directly results from another **claim** covered under this policy;

    e. a **claim** brought or maintained by or on behalf of any **employee** or **officer** in their capacity as an **employee** of the **company** for any **fiduciary act**;

    f. a **claim** brought by a **director, officer** or **employee** solely in his or her capacity as a customer of the **company** for an **electronic publishing act**, an **IRA/Keogh/Health Savings Account act**, a **trust act**, a **lending act**, or a **professional and depository services act**, provided such **claim** is instigated totally independent of, and totally without the solicitation, assistance, active participation, or intervention of, any other **insured**; or

    g. a **claim** brought by a **director, officer** or **employee** under the Electronic Banking Liability or the Security Breach - Privacy Liability Insuring Agreements;

    h. a **claim** brought or maintained by or on behalf of a bankruptcy trustee, receiver, conservator, rehabilitator, liquidator or examiner of the **company** (including the Federal Deposit Insurance Corporate, National Credit Union Administration or other governmental authority)**,** or any assignee of such bankruptcy trustee, receiver, conservator, rehabilitator, liquidator or examiner or comparable authority of the **company;**

    i. a **claim** brought or maintained solely by an **insured person** when such **insured person** is protected under a federal or state whistleblower statute or any regulation promulgated thereunder;

5.   Section 3 exclusion N is deleted and replaced with the following:

    N. based upon, arising out of, or attributable to:  (i) the actual, alleged or threatened discharge, release, escape, seepage, migration or disposal of **pollutants** into, in or on real or personal property, water or the atmosphere; or (ii) any direction or request that the **insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants**, or any voluntary decision to do so; provided this exclusion shall not apply to the Directors and Officers Liability and Employment Practices Liability Insuring Agreements;

6.   Section 3 exclusion P is deleted and replaced with the following:

    P. for false arrest, detention or imprisonment, malicious prosecution, wrongful entry, wrongful eviction, invasion of the right of private occupancy, discrimination, libel, slander, disparagement, or violation of a person's or organization's right of privacy or publicity right; except when covered under the Company Lender Liability, Employment Practices Liability, Third Party Harassment Liability, Electronic Banking Liability, Electronic Publishing Liability or Security Breach - Privacy Liability Insuring Agreements;

7.   Section 3 exclusion R is deleted and replaced with the following:

    R. for any actual or alleged obligation of an **insured** under any law governing workers compensation, unemployment benefits, social security benefits, disability benefits, medical benefits, insurance benefits, pension benefits or retirement benefits except when covered under the Fiduciary Liability or Employment Practices Liability Insuring Agreements;

8.   the third paragraph under <u>**Defense and Settlement**</u> is deleted and replaced with the following:

The Insurer may, with the consent of the **insured**, settle any **claim** for any monetary amount that the Insurer deems reasonable.  If an **insured** withholds consent to such settlement, the Insurer's liability for all **loss** arising from such **claim** shall not exceed:

    a. the amount for which the Insurer could have settled such **claim**; plus

    b. **defense expenses** incurred as of the date such settlement was proposed in writing by the Insurer to the **insured**; plus

    c. 70% of the covered **loss**, including **defense expenses** incurred after the date such settlement was proposed in writing by the Insurer to the **insured**, in excess of the amount for which the Insurer could have settled such **claim**.

Notwithstanding the foregoing, if the proposed settlement amount does not exceed the applicable retention shown in the Declarations, subpart c above shall not apply and the Insurer's liability for all **loss** arising from such **claim** shall not exceed the amount for which the Insurer could have settled such **claim** plus **defense expenses** incurred as of the date such settlement was proposed in writing by the Insurer to the **insured**.  Any amounts paid by the Insurer under subparts a, b or c above shall be part of and not in addition to the applicable limits of liability shown in the Declarations.

9.   the following is added at the end of the paragraphs under the title <u>**Representations and Severability**</u>:

The Insurer shall not rescind any coverage provided under the Directors and Officers Liability Insuring Agreement for any **insured person** who, as of the effective date of this policy, did not know that any facts were not truthfully disclosed in the **application**.

10. the following exclusion is added under the heading <u>**Exclusions Applicable to Insuring Agreement H.**</u> in Insuring Agreement H. **Employment Practices Liability**:

The Insurer shall not be liable for **loss** in connection with any **claim** based upon, arising out of, or attributable to any actual or alleged violations of any federal, state, local or foreign wage and hour laws, whether statutory or common law, including, without limitation, the Fair Labor Standards Act (except the Equal Pay Act provisions), including any amendments thereto, except for **defense expenses** as covered under the Fair Labor Standards Defense Coverage Extension.

11. the following extension is added to Insuring Agreement H. **Employment Practices Liability**:

**<u>Extension - Fair Labor Standards Defense Coverage</u>**

Subject to all of Insuring Agreement H's limitations, conditions, provisions and terms, the Insurer shall pay up to $200,000 on behalf of the **insureds** for **defense expenses** incurred in connection with any **claim** based upon, arising out of, or attributable to any actual or alleged violations of any federal, state, local or foreign wage and hour laws, whether statutory or common law, including, without limitation, the Fair Labor Standards Act (except the Equal Pay Act provisions), including any amendments thereto, first made during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, for an **employment practices act** taking place after the **retroactive date** if any.  This extension of coverage shall be part of, and not in addition to, Insuring Agreement H's Policy Year Limit of Liability.

12. that <u>**Extension - Health Insurance Portability and Accountability Penalties Coverage**</u> under the Fiduciary Liability Insuring Agreement is deleted and replaced with the following:

**<u>Extension - Health Insurance Portability and Accountability Penalties Coverage</u>**

Subject to all of Insuring Agreement F's limitations, conditions, provisions and terms, the Insurer shall pay up to $200,000 on behalf of the **insureds** for civil money penalties imposed upon any one or more **insureds** for any violation of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996 (and any amendments thereto), that any **insured** becomes legally obligated to pay during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, as a result of a covered **fiduciary act** taking place before the expiration of the policy and after the **retroactive date**, if any.  This extension of coverage shall be part of, and not in addition to, Insuring Agreement F's Policy Year Limit of Liability.

13. the paragraphs under **Acquisition or Creation of an Entity or Plan** under <u>**Changes in Exposure**</u> in Section 4. are deleted and replaced with the following:

If during the **policy period** the **company**:
    a.  acquires securities in another entity or creates another entity, which as the result of such acquisition or creation becomes a **subsidiary**;
    b.  acquires any entity by merger into or consolidation with the **company**;
    c.  creates a **plan**; or
    d.  acquires a **plan** through merger into or consolidation with the **company**,
such entity, or **plan**, and its **insured persons** shall be covered under this policy as follows:

If the fair value of all cash, securities, assumed indebtedness and other consideration paid by the **company** for any such creation or acquisition is less than 35% of the combined total assets of the **company** and if the acquired or created entity does not render any professional services or does not conduct any type of business which is not already offered by the **company**, as reflected in the **company's** most recent financial statements as of the inception of the **policy period**, such entity, and its **insured persons** shall automatically be covered under this policy, but only for **claims** made for **wrongful acts** taking place after such creation or acquisition, unless the Insurer agrees to provide coverage by endorsement for **wrongful acts** taking place before such creation or acquisition.

If the assets of the acquired or created **plan**, is less than 35% of the total assets of all of the **plans**, as reflected in the **plans'** most recent financial statements as of the inception of the **policy period**, such entity, or **plan**, and its **insured persons** shall automatically be covered under this policy, but only for **claims** made for **wrongful acts** taking place after such creation or acquisition, unless the Insurer agrees to provide coverage by endorsement for **wrongful acts** taking place before such creation or acquisition.

With respect to all other creations or acquisitions described in subparts a, b, c or d above, such entity, or **plan**, and its **insured persons** shall automatically be covered under this policy, but only for ninety (90) days or the remainder of the **policy period**, whichever is less, following the effective date of such creation or acquisition, and only for **claims** made for **wrongful acts** taking place after such creation or acquisition, unless the Insurer agrees, by endorsement to extent the period of coverage and/or to provide coverage for **wrongful acts** taking place before such creation or acquisition.

The Insurer has the right to subject any further extensions of coverage to review of whatever information the Insurer deems appropriate and to premium and coverage considerations.

Notwithstanding the foregoing, no coverage shall be afforded by this subsection with respect to any multi-employer plan or employee stock ownership plan (as defined in ERISA) unless such coverage is specifically granted by endorsement to this policy.

14. item e. under **Cessation of Business or Reorganization** in Section 4. is deleted in its entirety.

15. that the first 2 paragraphs under **Notice** of Section 4. General Terms, Conditions and Limitations are deleted and replaced with the following:

The **insureds** shall, as a condition precedent to their rights under this policy, give to the Insurer written notice of any **claim** made against the **insureds** as soon as practicable, but in no event later than: (a) sixty (60) days after expiration of the **policy year** in which the **claim** was first made; or (b) the expiration of the Automatic Reporting Period or, if exercised, the Extended Reporting Period. The **insureds** shall be deemed to have notice of a **claim** when the **Executive Officers** of the **company** first learn of such **claim**.

If during the **policy period**, the **Executive Officers** of the **company** become aware of circumstances which could give rise to a **claim** for a **wrongful act** taking place before or during the **policy period** and give written notice of such circumstances and the other information referenced below to the Insurer during the **policy period**, then any **claims** subsequently arising from such circumstances shall be considered to have been made during the **policy year** in which such notice of such circumstances and such other information was first given to the Insurer.

16. the paragraphs under the title **Each Insuring Agreement Policy Year Limit of Liability** in Section 4. are deleted and replaced with the following:

The Insurer's maximum liability for **loss** under an insuring agreement as a result of all **claims** first made during the same **policy year**, including the Automatic Reporting Period or, if exercised, the Extended Reporting Period, shall be the respective amount shown in the Declarations as the Policy Year Limit of Liability for that insuring agreement.

**Defense expenses** shall be a part of, and not in addition to, the insuring agreement's Policy Year Limit of Liability, and **defense expenses** shall reduce and may exhaust such limit of liability.

If **loss** arising from a single **claim** is covered under more than one insuring agreement, then the Insurer's maximum liability shall be limited to the highest Policy Year Limit of Liability of any insuring agreement providing coverage and only the retention of that insuring agreement shall apply.  However this provision shall not apply to the Excess Insured Persons Insuring Agreement.

All **claims** that are made and reported to the Insurer during the **policy period** or the Automatic Reporting Period or, if exercised, the Extended Reporting Period, and that involve the same **wrongful act** or **interrelated wrongful acts** of one or more **insured person(s)** shall be deemed to have been made solely within the earliest of the following **policy years**:
    a.  the **policy year** in which the earliest **claim** involving the same **wrongful act** or **interrelated wrongful acts** is first made, or

STAR 00047

    b.   the **policy year** in which the **claim** involving the same **wrongful act** or **interrelated wrongful acts** shall be deemed to have been made pursuant to the second paragraph under **Notice**, if applicable.

In the event that more than one **insured** is included in the same **claim**, the total amount of the available limit of liability shall be apportioned in proportion to their respective **loss** and the retention shall be apportioned pro rata among the **insureds**, unless otherwise mutually agreed upon by the **insureds** and the Insurer.

All other terms, conditions and limitations of this policy shall remain unchanged.

**STAR 00048**

Amend Exclusions F and J Endorsement

To be attached to and form part of Policy No.:   ___MLP 6014300-11___   Effective:  ___11/28/2016___

It is agreed that:

1.   Section 3 exclusion F is deleted and replaced with the following:

F.   for any fraudulent, dishonest or criminal actions of an **insured** or for any deliberate or willful omission of, violation of or noncompliance with any statute or regulation by an **insured**.  However, an **insured** shall be indemnified for **defense expenses** as to any **claim** alleging such fraudulent, dishonest or criminal actions or deliberate omission or willful violation of or noncompliance with any statute or regulation, until a final judgment, final determination or final adjudication, which would not be deemed to have occurred until any actual appeals have been exhausted, establishes such fraudulent, dishonest or criminal actions or deliberate omission or willful violation of or noncompliance with any statute or regulation.  In the event such fraudulent, dishonest or criminal actions or deliberate omission or willful violation of or noncompliance with any statute or regulation are established, the appropriate **insured** agrees to repay the Insurer, upon demand, all monies advanced by the Insurer in connection with such **claim**;

2.   Section 3 exclusion J is deleted and replaced with the following:

J.   for any **insured** gaining in fact any personal profit, remuneration or financial advantage to which such **insured** was not legally entitled.  However, an **insured** shall be indemnified for **defense expenses** as to any **claim** alleging such personal profit, remuneration or financial advantage, until a final judgment, final determination or final adjudication, which would not be deemed to have occurred until any actual appeals have been exhausted, establishes such personal profit, remuneration or financial advantage. In the event such personal profit, remuneration or financial advantage is established, the appropriate **insured** agrees to repay the Insurer, upon demand, all monies advanced by the Insurer in connection with such **claim**;

All other terms, conditions and limitations of this policy shall remain unchanged.

Accepted:

By:   _____
                    Signature and Title

STAR 00049

Amend Duty of the Insureds to Defend Endorsement

To be attached to and form part of Policy No.:      MLP 6014300-11                    Effective:    11/28/2016

It is agreed that the three paragraphs within Section 4 under the title **Duty of the Insureds to Defend** are deleted and inserted in lieu thereof is the following:

It shall be the duty of the **insureds** to select defense counsel, which shall be subject to the approval of the Insurer (such approval shall not be unreasonably withheld), and to defend any **claim** covered under this policy except for **claims** covered under the Employment Practices Liability Insuring Agreement.

With respect to any **claim** submitted for coverage, the Insurer shall have the right and shall be given the opportunity to effectively associate with, and shall be consulted in advance by, the **insureds** regarding:  (a) the selection of appropriate defense counsel; (b) substantive defense strategies, including decisions regarding the filing and content of substantive motions; and (c) settlement negotiations.

Subject to the Allocation section, the Insurer shall advance, on behalf of the **insureds**, **defense expenses** which the **insureds** have incurred in connection with **claims** made against them, before disposition of such **claims**, provided that to the extent that it is finally established that any such **defense expenses** are not covered under this policy, the **insureds**, severally according to their respective interests, agree to repay the Insurer such **defense expenses**.

**Duty of the Insurer to Defend**

The Insurer has the right and duty to defend any **claim** covered under the Employment Practices Liability Insuring Agreement, even if any of the allegations in such **claim** are groundless, false or fraudulent.  The Insurer will choose defense counsel regardless of whether the retention applicable to such **claim** has or is likely to be exhausted, although the Insurer shall not be liable to pay covered **loss**, including **defense expenses** with respect to such **claim** until the applicable retention has been exhausted.  The **insured** shall provide the Insurer with such information, assistance and cooperation as the Insurer may reasonably require.

Subject to the Allocation section, if the Insurer shall paid, on behalf of the **insureds**, **defense expenses** incurred in connection with **claims**, before disposition of such **claims**, then to the extent that it is finally established that any such **defense expenses** are not covered under this policy, the **insureds**, severally according to their respective interests, agree to repay the Insurer such **defense expenses**.

All other terms, conditions and limitations of this policy shall remain unchanged.

Accepted:

By:  _____
                        Signature and Title

STAR 00050

Amend Insuring Agreement N Endorsement

To be attached to and form part of Policy No.:  _MLP 6014300-11_____   Effective:  _11/28/2016_____

It is agreed that Insuring Agreement N. **Security Breach Expenses** is deleted and replaced with the following:

N. **Security Breach Expenses**

The Insurer shall pay on behalf of the **company**, **security breach expenses** which the **company** incurs during the **policy period**, the Automatic Reporting Period, or, if exercised, the Extended Reporting Period, as the result of a **security breach** or an **electronic banking act** discovered during the **policy period** and taking place after the **retroactive date**.

All other terms, conditions and limitations of this policy shall remain unchanged.

Accepted:

By:  _____
                Signature and Title