EXHIBIT B

Electronically Filed - City of St. Louis - March 06, 2020 - 01:51 PM

# IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
## STATE OF MISSOURI

STUART RADLOFF, TRUSTEE FOR THE BANKRUPTCY ESTATE OF JEROME TALAMANTE and GEORGE P. OCHOA

    Plaintiffs,

v.

1ST FINANCIAL FEDERAL CREDIT UNION,

    Defendant.

Case No. 1922-CC10792

## First Amended Petition

Plaintiffs Stuart Radloff and George P. Ochoa ("Plaintiffs") sue Defendant 1st Financial Credit Union ("Credit Union"):

### Nature of Case

1. This is a consumer class action against Credit Union and its predecessors or successors, seeking relief to redress an unlawful and deceptive pattern of wrongdoing followed by Credit Union regarding collection, enforcement, repossession and disposition of collateral, and collection of alleged deficiencies.

2. Credit Union violated § 408.553 by charging interest during the time after Plaintiffs' and numerous other Missouri consumers' alleged defaults and before Credit Union obtained deficiency judgments against them.

1

3.	Credit Union mailed Plaintiffs and many other consumers a presale notice, which violated the Uniform Commercial Code ("UCC") adopted by each state.[1] Credit Union's form presale notice is attached as **Exhibit 1**.

4.	Credit Union mailed Plaintiffs and numerous other consumers a post-sale notice, which violated the UCC. Credit Union's form post-sale notice is attached as **Exhibit 2**.

5.	Credit Union violated §§ 400.9-602 and 400.9-623 because by uniform practice Credit Union restricted the rights to redemption, including a redemption policy requiring consumers to: (a) redeem by certified funds and (b) prove they have sufficient income or budget to afford loan payments after redemption.

6.	Plaintiffs sue for themselves and all other similarly situated consumers. They seek actual damages not less than the statutory minimum provided for under the UCC, and such other further relief as this Court may deem appropriate.

## Parties

7.	Stuart Radloff (Talamante) is a resident of Missouri.

8.	George P. Ochoa is a resident of Missouri.

9.	Credit Union is a federally chartered credit union qualified to do business in the State of Missouri.

10.	All allegations of acts or omissions by Credit Union include, but are not limited to, acts and omissions of Credit Union's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners; and that

---

[1] Class Representatives cite to the sections of the official text of the UCC. The sections of the UCC cited by Class Representatives have been adopted by all 50 states with no material variation that would affect the claims of the putative class members, regardless of where the putative class member resides, the loan originated, or the repossession took place. Article 9 of the UCC has been adopted in Missouri at § 400.9-101, *et seq*. Missouri's statutory scheme for its version of the UCC adds the prefix of 400 to the UCC numbering scheme. For example, § 9-614 of the UCC is denominated § 400.9-614 in Missouri's statutes.

such acts and omissions were made with Credit Union's express and/or implied authority, or were ratified or otherwise approved by Credit Union; or that such acts or omissions were made in the routine normal course and scope of their agency and employment as Credit Union's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners.

## Jurisdiction and Venue

11. This is a civil case, so this Court has jurisdiction.

12. Class members may have damages over $25,000.

13. Venue is proper in this Court under § 508.010 because Credit Union is a resident of and may be found in St. Louis City, Missouri.

## General Allegations

14. Plaintiffs and each class member signed a consumer credit contract for the purchase of a motor vehicle ("Property").

15. The Property was bought for use primarily for personal, family or household purposes.

16. The consumer credit contract was for the sale of a motor vehicle by a retail seller to a retail buyer on time under a retail installment contract for a time sale price payable in one or more deferred installments.

17. Plaintiffs and each class member were debtors or obligors in a consumer-goods transaction as those terms are defined under the UCC.

18. Credit Union is a "moneyed corporation" under § 516.420 because it has banking powers or the power to make loans upon pledges or deposits.

Electronically Filed - City of St. Louis - March 06, 2020 - 01:51 PM

19. Credit Union mailed presale notices to Plaintiffs and the Class (defined below), advising of Credit Union's intent to dispose of their property in purported compliance with the UCC.

20. The presale notices mailed to Plaintiffs and the Class were not reasonable notifications as required by §400.9-611(b) because, among other reasons, it failed to provide a description of any liability for a deficiency of the person to which the notification is sent as required by §400.9-614(1)(B) and otherwise inaccurate or misleading.

21. Credit Union failed to send Plaintiffs and the Class reasonable authenticated notices of disposition as required by §400.9-611(b).

22. Credit Union mailed post-sale notices to Plaintiffs and each class member explaining how it calculated their deficiency balances.

23. Credit Union mailed post-sale notices to Plaintiffs and the Class that failed to comply with §400.9-616 because, among other reasons:

  a. the information in the post-sale notices was inaccurate;

  b. the post-sale notices did not provide all the information, in the requisite order, as required by § 400.9-616(c)(3);

  c. the post-sale notices did not state future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency, as required by § 400.9-616(a)(1)(C); and

  d. the post-sale notices misstated the aggregate amount of obligation (as required by § 400.9-616(c)(1)) and the amount of the deficiency (as required by §§ 400.9-616(a)(1)(A), (c)(6)) by including unpaid balances or interest that had not become due and forfeited its right to a deficiency.

24. Future debits, credits, charges including additional credit services charges or interest, rebates, and expenses affected the amount of the surplus or deficiency for Plaintiffs and the Class.

25. Credit Union's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance.

26. Credit Union unlawfully collected or attempted to collect interest accruing after default and before judgment from Plaintiffs and the Class.

27. Credit Union unlawfully collected or attempted to collect deficiency balances from Plaintiffs and the Class after Credit Union issued defective presale and post-sale notices.

28. Credit Union unlawfully collected or attempted to collect the time price differential, delinquency and collection charges from Plaintiffs and other Missouri consumers issued defective presale and post-sale notices.

29. The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports harmed the class members' credit worthiness, credit standing, credit capacity, character, and general reputation.

30. The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that defames, slanders or libels the class members.

31. The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that invaded the Class's privacy rights.

32. ==The defective presale and post-sale notices were not sent with knowledge of their falsity.==

5

33. The reporting of false or inaccurate derogatory information on the class members' credit reports was not done with knowledge of its falsity.

34. Credit Union's acts that violated the UCC and Chapter 408 do not involve or arise out of professional services the credit union provides to its customers.

35. Credit Union's acts that violated the UCC and Chapter 408 required no professional skill.

36. Credit Union's acts that violated the UCC and Chapter 408 required no specialized knowledge, labor, or skill.

37. Credit Union's acts that violated the UCC and Chapter 408, including stating "will or will not, as applicable" in the presale notices, might have arisen out of a typographical error.

38. Credit Union's acts that violated the UCC and Chapter 408 do not arise out of the ownership, maintenance, use, entrustment, operation, or control of repossessed property. Rather, the claims arise out of the defective presale and post-sale notices.

39. Credit Union did not intend to violate Chapter 408 or the UCC and did not intend injury to the class because it believed its notices were accurate, lawful and contained no misrepresentations.

40. Credit Union did not know the presale and post-sale notices, and its reporting of information on the class members' credit reports would violate the rights of the class members or inflict injury upon them.

41. Credit Union made negligent misrepresentations in its presale and post-sale notices.

42. Credit Union's negligent misrepresentations in the notices were the proximate cause of the loss of use of the vehicles because they precluded the class members from reclaiming their collateral before it was sold.

43. Credit Union's negligent misrepresentations in the notices were also the proximate cause of the loss of use of the: (a) class member's surplus funds owed them after the sale of the collateral; and (b) the money each class member paid, which was barred by statute and common law.

### Class Allegations

44. Plaintiffs sue individually and for the Class designated under Rules 52.08(a) and 52.08(b)(3) to remedy the ongoing unfair, unlawful, or deceptive business practices alleged, and seeks redress for all those persons harmed.

45. The "Class" comprises all persons within the applicable statute of limitations who Credit Union mailed:

   a. a presale notice stating anywhere in the notice the phrase: "will or will not, as applicable;" or

   b. a post-sale notice.

46. Excluded from the Class are persons whom Credit Union has obtained a final deficiency judgment or who filed for bankruptcy after the date on their presale notice and whose bankruptcy ended in discharge rather than dismissal.

47. Members of the Class are so numerous their individual joinder is impracticable. Plaintiffs are informed and believe the proposed Class contains hundreds of individuals who had their motor vehicles or other collateral repossessed, involuntarily or voluntarily, and disposed. The Class is sufficiently numerous to make joinder impracticable, if not impossible. Although the precise number of Class members is unknown, data produced by Credit Union suggests the class has over 800 members.

48. There are questions of law and fact common to the Class, which predominate over any issues involving individual class members.

7

49. Claims involving the interpretation of form documents present a classic case for treatment as a class action.

50. The principal legal question common to Plaintiffs and each class member is whether the form presale notices and form post-sale notices sent by Credit Union, or someone at its direction, complied with the UCC.

51. A central aspect of this action is a determination of whether Credit Union violated any statutory provisions governing its form UCC notices and uniform business practices.

52. Claims involving the interpretation of form notices and contracts present a classic case for treatment as a class action.

53. Plaintiffs' claims are typical of the claims of the Class members.

54. Plaintiffs are a part of the Class.

55. Plaintiffs possess the same interest as the Class members.

56. Plaintiffs suffered the same injury as the Class members.

57. Plaintiffs' and the Class's claims are based on the same factual and legal theories.

58. Missouri law applies to each Plaintiffs' and Class member's claims.

59. Plaintiffs' and the Class's rights derive from written, form contracts and a uniform statute adopted by all 50 states with no material variation for the claims asserted here.

60. All presale notices sent to the Class stated somewhere in the notice the phrase: "will or will not, as applicable."

61. The violations alleged by Plaintiffs and the Class derive from form presale notices and form post-sale notices that violate the UCC as adopted by Missouri.

62. Plaintiffs and each class member were damaged and may recover actual damages not less than the minimum damages provided by the UCC due to Credit Union's failure to provide proper presale notices and post-sale notices.

63. Plaintiffs will fairly and adequately represent and protect the interests of the Class.

64. Plaintiffs have no interests antagonistic to the Class members.

65. Plaintiffs' counsel is competent and experienced in consumer and class litigation.

66. Plaintiffs and all class members have an interest in determining the adequacy of the presale and post-sale notices sent by Credit Union and to recover damages due to the statutorily defective presale and post-sale notices.

67. The questions of law or fact common to the Class predominate over questions affecting only individual members.

68. Plaintiffs and each class member will rely on the same basic evidence (i.e., the form notices).

69. Determining the deficiency of the presale and post-sale notices resolves all class members' claims because each notice sent to the class members suffers from at least one of the same deficiencies as Plaintiffs' notices.

70. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

71. The class members are consumer debtors, who likely cannot locate or afford to hire lawyers.

72. Most class members are probably unaware Credit Union violated their rights and the law.

73. If each of the class members were forced to bring an individualized suit, such suits would burden judicial resources and create the risk of multiple inconsistent results for similarly situated parties.

74. Concentrating the litigation of Plaintiffs' and the Class members' claims is also desirable and logical given the predominance of common questions of law and fact alleged above.

75. The Class should be certified under Rule 52.08(b)(3), as the superior method for the fair and efficient adjudication of this controversy.

76. Plaintiffs also seek a declaration the form presale and post-sale notices used by Credit Union violate Missouri or other applicable law.

### Count I – Class's Claim

77. Plaintiffs repeat the allegations set forth above as if set forth in Count I.

78. Credit Union violated the UCC by failing to provide the presale notice in the form and manner required under the UCC before disposing of collateral secured by loans entered by, assigned to, or owned by Credit Union.

79. The presale notices Credit Union sent to Plaintiffs and the Class included additional language or content not authorized or allowed by law, rendering the presale notices misleading or unreasonable in violation of §§ 400.9-611 and 400.9-614 of the UCC.

80. Credit Union violated § 400.9-611 because it failed to provide "reasonable authenticated notice of disposition" to Plaintiffs and the Class.

81. Credit Union did not send post-sale notices, or any other explanation or writing, to Plaintiffs and the Class that complied with § 400.9-616.

82. Credit Union's failure to provide statutorily compliant post-sale notices was part of a pattern, or consistent with a practice, of noncompliance because Credit Union sent the same noncompliant form post-sale notices to Plaintiffs and the Class.

Electronically Filed - City of St. Louis - March 06, 2020 - 01:51 PM

83. As a direct and proximate result of failure to comply with the requirements of Subchapter 6 of Article 9 of the UCC, Plaintiffs and the Class suffered actual damages not less than the minimum damages provided by §400.9-625(c)(2), including:

   a. loss of use of tangible property and cost of alternative transportation;

   b. loss resulting from the inability to obtain, or increased costs of, alternative financing;

   c. harm to credit worthiness, credit standing, credit capacity, character, and general reputation;

   d. harm caused by defamation, slander and libel;

   e. harm caused by invasion of privacy; and

   f. other uncertain and hard-to-quantify actual damages.

WHEREFORE, Plaintiffs pray this Court certify the Class and enter a judgment for Plaintiffs and the Class against Credit Union:

   a. awarding actual damages not less than the minimum damages provided by §400.9-625(c)(2);

   b. statutory damages of $500 for each defective post-sale notice sent or that Credit Union failed to send;

   c. prejudgment and post-judgment interest;

   d. a preliminary and permanent injunction enjoining Credit Union from engaging in the practices alleged, including without limitation, enjoining Credit Union from collecting time price differential, delinquency and collection charges from Plaintiffs and the Class;

e. a mandatory injunction compelling Credit Union to return any money collected for time price differential, delinquency and collection charges from Plaintiffs and the Class;

f. a mandatory injunction compelling Credit Union to remove any adverse credit information wrongfully reported on Plaintiffs' and the Class's consumer credit reports;

g. a declaration that the presale and post-sale notices sent by Credit Union to Plaintiffs and the Class fail to comport with the UCC; and

h. for such other and further relief as this Court deems just and proper.

ONDERLAW, LLC

By: */s/ Martin L. Daesch*
Martin L. Daesch, #40494
Jesse B. Rochman, #60712
Matt P. O'Grady, #47543
110 E. Lockwood Ave.
St. Louis, MO 63119
(314) 963-9000 (telephone)
(314) 963-1700 (facsimile)
daesch@onderlaw.com
rochman@onderlaw.com
ogrady@onderlaw.com

*Attorneys for Plaintiff*

## Certificate of Service

I certify on March 6, 2020 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

*/s/ Martin L. Daesch*