IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ALLTRU FEDERAL CREDIT UNION, f/k/a 1ST FINANCIAL FEDERAL CREDIT UNION,<br><br>    Plaintiff,<br><br>v.<br><br>STARNET INSURANCE COMPANY,<br><br>    Defendant. | Case No.: 21-CV-1334 |

# DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Defendant StarNet Insurance Company ("Starnet") submits the following reply in further support of its Motion to Dismiss Plaintiff Alltru Federal Credit Union f/k/a 1st Financial Federal Credit Union ("1st Financial"). For the further reasons set forth herein, 1st Financial fails to establish that there is a duty to defend or indemnify under Insuring Agreements I and K of Starnet Management Liability Insurance Policy No. MLP 6014300-11 (the "Policy") in connection with an underlying class action lawsuit (the "Underlying Lawsuit") filed against 1st Financial in St. Louis City Circuit Court.

## ARGUMENT

**I.   1ST FINANCIAL'S OPPOSITION VIOLATES THE RULES OF CIVIL PROCEDURE.**

Before addressing the substantive arguments, this Court should address 1st Financial's procedural violation. 1st Financial attaches to its opposition copies of the settlement agreement that is pending final approval in the Underlying Lawsuit and an April 17, 2020 letter between 1st

Financial's counsel in this lawsuit and Thomas E. Geyer of Bailey Cavalieri.[1] (*See* Doc. 19-3 at pp. 18–22; Doc. 19-4). Neither of these exhibits is embraced by the Complaint. Documents outside the pleadings, and which are not necessarily embraced by the complaint, cannot be considered at the motion to dismiss stage. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (citing *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th Cir. 1997)). Therefore, this Court should disregard these improperly included exhibits and arguments related thereto.

## II. 1ST FINANCIAL UNREASONABLY CONSTRUES INSURING AGREEMENT I.

### A. 1st Financial Cannot Establish a "Third-Party Harassment Act" Because of an Allegedly Missing Semi-Colon.

1st Financial consumes nearly seven pages of its opposition on a missing semi-colon, which it deems essential. However, none of 1st Financial's cited case law directly supports its flawed conclusion that "of a natural person other than an **employee**, **officer or director** and other than as part of a **lending act**" modifies only "bullying" in the definition of "Third-party harassment act." (Doc. 19 at p. 12).

1st Financial appears to be attempting to apply the rule of the last antecedent. However, even the U.S. Supreme Court "has declined to apply the rule where … the modifying clause appears after an integrated list." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163, 1170 (2021) (citing *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 344 n.4 (2005)). If there is a rule of interpretation to be applied here, it is the series-qualifier canon. Under the series-qualifier canon,

---

[1] Incidentally, 1st Financial claims that Starnet ignored the settlement agreement in its Motion to Dismiss. (Doc. 19 at p. 17). The settlement agreement apparently was executed on February 18, 2022. (Doc. 19-4 at pp. 40–43). Starnet filed its Motion to Dismiss on December 17, 2021. (Doc. 10). Starnet cannot ignore a document that did not exist at the time. Regardless, the document does not change the landscape for 1st Financial, as is set forth in Sections II and III, *infra*.

"'[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series,' a modifier at the end of the list 'normally applies to the entire series.'" *Duguid*, 141 S.Ct. at 1169 (quoting A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012)).

Here, the modifying phrase can be tacked on seamlessly and fluidly to the end of each of paragraphs a through e, permitting a natural and reasonable reading of the definition. The rule of the last antecedent is not intended for such situations. *See Lockhart v. United States*, 577 U.S. 347, 364–65 (2016) (Kagan, J., dissenting) (contrasting a series-qualifier example—"an actor, director, or producer involved with Star Wars"—with a last antecedent example—"a President, Supreme Court Justice, or actor involved with Star Wars"); *United States v. Loyd*, 886 F.3d 686, 688 (8th Cir. 2018) (citing *Wong v. Minn. Dep't of Human Servs.*, 820 F.3d 922, 929 (8th Cir. 2016)). Tacking the modifying phrase onto the end of each of the preceding paragraphs also does not create redundancies, resulting in another justification for why the rule of the last antecedent should not apply. *See Lockhart*, 577 U.S. at 356 (explaining the decision to apply the rule of the last antecedent where it was "clear that applying the limiting phrase to all three items would risk running headlong into the rule against superfluity by transforming a list of separate predicates into a set of synonyms describing the same predicate").

Irrespective of the rules of construction, simple logic refutes the assertion that the modifying phrase "of a natural person other an **employee**, **officer or director** and other than as a part of a **lending act**" modifies only "bullying." Starnet would have put the modifying phrase on the same line as "bullying" if it had intended to modify only "bullying."

Contrary to 1st Financial's assertions, moreover, a semi-colon at the end of "bullying" and before the modifying phrase is not mandatory. That is established by 1st Financial's own case law

3

citations. The *Fluor Corporation* court, for example, was able to discern that "AS RESPECTS INCIDENTAL PROFESSIONAL LIABILITY ENDORSEMENT" modified both "500,000 EACH CLAIM" and "500,000 EACH AGGREGATE" despite the modifying phrase following, and being on the same line as, "500,000 EACH AGGREGATE" and despite no punctuation. *Fluor Corp. v. Zurich Am. Ins. Co.*, 550 F. Supp. 3d 764, 775 (E.D. Mo. 2021). That court "decline[d] to create ambiguity where none exists" in favor of "read[ing] policies as a whole." *Id.* So too should this Court.

The "reasonable meaning" of "Third-party harassment act" is that each of the enumerated series of offenses in paragraphs a through e excludes from the definition the same enumerated offenses when they are "part of a **lending act**." Stated another way, if 1st Financial's construction is adopted, 1st Financial has just eliminated coverage for itself if or when any lawsuit is brought against it alleging "bullying" in the employment context. Starnet presumes 1st Financial will take a different tune about the construction of this definition if or when that happens.

**B.     1st Financial Cannot Avoid That the Underlying Lawsuit Is About Lending Acts Either.**

1st Financial's default appears to be to attempt to create ambiguity where none exists. (Doc. 19 at p. 16). 1st Financial strains credulity with its assertion that the Policy is ambiguous, or even illusory, if allegedly reporting repossession of a vehicle to a credit reporting agency is interpreted to be "in connection with or relating to … repossession or foreclosure of a loan, lease or extension of credit." (*Id.* at pp. 13–16).

Starnet observes that 1st Financial ducks addressing *Bank of Camilla v. St. Paul Mercury Insurance Company*, 939 F. Supp. 2d 1299 (M.D. Ga. 2013) and its "broad reading" of a near-identical definition of "lending act" in its opposition. Avoiding detrimental, on-point case law because it is out-of-state, however, will not help 1st Financial avoid that Missouri courts

4

similarly broadly read the phrases "in connection with" and "relating to," including in insurance policies. *See Cameron Mut Ins. Co. v. Skidmore*, 633 S.W.2d 752, 753 (Mo. App. S.D. 1982) (stating that "'in connection with' has a broader meaning" and deeming both setting a fire and failing to stop a fire from spreading as being "in connection with … premises"); *see also Wilbers v. Moneta Grp. Inv. Advisors, Inc.*, No. 406CV00005 ERW, 2006 WL 1360866, at *2 (E.D. Mo. May 17, 2006) ("In general, courts give the phrase 'relates to' a very broad meaning."). In fact, 1st Financial's entire argument is a red herring designed to try to distract from case law rejecting attempts like 1st Financial's to divorce ancillary alleged misconduct from the actual vehicle repossession. *See Anheuser Busch Emp. Credit Union v. Travelers Prop. & Cas. Ins. Co.*, No. 4:18 CV 1208 CDP, 2020 WL 1675685, at *3 (E.D. Mo. Apr. 6, 2020) (citing *Landers Auto Grp. v. Cont'l W. Ins. Co.*, 621 F.3d 810, 814 (8th Cir. 2010)) ("The fundamental premises of ABECU's argument—that the asserted 'loss of use' damages are conceptually and legally severable from the act of repossession which causes the loss of use—has been addressed and squarely rejected by courts …").

Ultimately, 1st Financial does not cite any authority besides its own say-so to support interpreting "lending act" more narrowly than Starnet proffers. (Doc. 19 at p. 14–16). 1st Financial does not even explain to this Court what a narrower interpretation looks like—other than an interpretation that is not Starnet's. (*Id.* at pp. 14–15). Neither is enough to overcome that it is the Underlying Lawsuit that connects the alleged reports to credit reporting agencies to vehicle repossessions following apparent defaults under debtors' loans with 1st Financial. (Doc. 4-1 at ¶¶ 14, 29–30, 42, 78, 83). Those allegations dictate the determination that there is no duty to defend or indemnify under Insuring Agreement I.

Therefore, for these additional reasons, this Court should find in favor of Starnet on Counts

4894-8699-4464

I, II, and III with respect to Insuring Agreement I.

**III.    1ST FINANCIAL'S OPPOSITION DOES NOT SET FORTH ANY BASIS ESTABLISHING A DUTY TO DEFEND OR INDEMNIFY UNDER INSURING AGREEMENT K.**

**A.    1st Financial Concedes That There Is No Duty to Defend or Indemnify.**

1st Financial's opposition establishes that 1st Financial either has conceded that there is no coverage for certain claims or that it has no legal or factual basis to refute Starnet's arguments establishing that there is no coverage. Specifically, 1st Financial concedes that there is no duty to defend or indemnify any alleged claim for defamation or invasion of privacy in connection with the mailed pre- and post-sale notices and any oral communication. (Doc. 19 at p. 17). Additionally, 1st Financial does not cite a single legal authority or a single supported fact or allegation establishing that there is a public disclosure of private fact sufficient to plead an invasion of privacy claim as a matter of law. (Doc. 19 at p. 18). Once again, 1st Financial's source of authority for its assertion that credit reporting agencies' alleged disclosures to banks and lenders—an allegation that appears nowhere in the pleadings—is a public disclosure as a matter of law is 1st Financial's own say-so. (*Id.*). Still further, 1st Financial has no explanation for how Insuring Agreement K is supposed to respond to a prayer for equitable relief only, which does not constitute a covered "loss" under the Policy. (*See* Doc. 10 at p. 14). Its only response is that "loss" is defined to include "settlements." (*See* Doc. 19 at pp. 19–20). Prayers for equitable relief are settled via settlement agreements too. Accordingly, by its silence, 1st Financial concedes that there is no duty to defend or indemnify because there is no "loss."

The above concessions or omissions, taken together, are dispositive to Starnet's right to relief. Any remaining coverage arguments depend, in part, on at least one of the above concessions by 1st Financial. Accordingly, 1st Financial fails to raise any basis to avoid dismissal of the Complaint, and this Court should grant Starnet's Motion to Dismiss on Counts I, II, and III.

4894-8699-4464

> **B.    Even Putting Aside That 1st Financial Concedes That There Is No Coverage, 1st Financial Still Cannot Establish That the Underlying Lawsuit Pleads a "Loss" That 1st Financial Was "Legally Obligated to Pay" for an "Electronic Publishing Act."**

1st Financial's opposition does not set forth any basis establishing that it meets its burden of persuasion to prove a covered "loss" under Insuring Agreement K.  *Lambi v. Am. Fam. Mut. Ins. Co.*, No. 4:11-CV-00906-DGK, 2012 WL 2049915, at *4 (W.D. Mo. June 6, 2012), *aff'd*, 498 F. App'x 655 (8th Cir. 2013) (citing *Am. States Ins. co. v. Herman C. Kempker Constr. Co., Inc.*, 71 S.W.3d 232, 235 (Mo. App. W.D. 2002)).

1st Financial misses the point of the relevance and effect of the Fair Credit Reporting Act with its attempted comparison to *Farmland Industries, Inc. v. Republic Insurance Company*, 941 S.W.2d 505 (Mo. banc 1997).  (Doc. 19 at p. 20).  Starnet is not resorting to a statutory definition to interpret a term in its Policy.  (*Id.* at p. 21).  Starnet is looking to how the terms libel, slander, or violation of the right of privacy are interpreted as a matter of law in Missouri, in this factual context, because that is what is required to interpret a policy issued to a Missouri insured.  If, for example, "infringement of a copyright" in sub-paragraph d of the definition of "electronic publishing act" were at issue, Starnet would be looking for whether the allegations of the Underlying Lawsuit pled a federal or state copyright infringement claim.  How Starnet is proceeding in its analysis, moreover, is endorsed by the 8th Circuit, which binds this Court.  *See Reliance Ins. Co. v. Shenandoah S., Inc.*, 81 F.3d 789, 791–92 (8th Cir. 1996) (analyzing whether allegations in a lawsuit satisfied the elements of a defamation or disparagement action brought by a public figure in response to insured's claim that allegations of damage to reputation and good will in the community as part of a negligent misrepresentation claim triggered personal and advertising injury coverage).

Accordingly, the Underlying Lawsuit has to plead malice or intent to injure in order to

7

plead the elements of defamation based on an allegedly inaccurate, electronically submitted credit report and thereby trigger Insuring Agreement K.[2]  *See Drew v. Capital One Bank (USA) N.A.*, No. 1:16CV00095 SNLJ, 2016 WL 3402540, at *2 (E.D. Mo. June 21, 2016).  No such allegations appear in the Underlying Lawsuit.  (Doc. 4-1 at ¶¶ 32–33, 39–40).  Underlying class counsel attempted to be clever by gratuitously quoting policy language to try to trigger coverage, on the one hand, and avoid exclusions in a general liability policy, on the other hand.  (*See id.* at ¶¶ 30–40).  Specifically, underlying class counsel pled that there was no intent to injure and no knowing violation of rights—the opposite of what establishes defamation because of a credit report.  (*Id.* at ¶¶ 39–40).  In its attempt to be clever, underlying class counsel pled 1st Financial out of any possibility of coverage under the subject Policy.

1st Financial's assertion that it settled "defamation" claims regardless requires no resort to any settlement agreement to determine that any such agreement does not make the allegedly settled claims covered under Insuring Agreement K.  1st Financial has no answer for why it settled alleged claims that it has no legal obligation to pay.  (*Compare* Doc. 10 at p. 13 *with* Doc. 19 at pp. 19–20).  It quotes the policy definition of "loss" without ever assessing what "legally obligated" means.  Stated another way, 1st Financial cannot meet its burden to prove a covered claim merely by regurgitating policy language.

But then, the reason for 1st Financial's voluntary payment is obvious.  It bet on Insuring Agreement K ultimately being a source of settlement funds (despite Starnet's admonitions to the contrary).  There is no duty to defend or indemnify under Insuring Agreement K.  Accordingly,

---

[2] The reasons that Insuring Agreement K is not triggered apply equally to Insuring Agreement I. Insuring Agreement I does not apply to "lending acts," but that issue is not even reached considering that there are no claims for defamation or invasion of privacy in the Underlying Lawsuit, as a matter of law.

8

this Court should dismiss Counts I, II, and III of the Complaint.

## IV.     1ST FINANCIAL CANNOT AVAIL ITSELF OF WAIVER OR ESTOPPEL.

1st Financial's final argument based on waiver and estoppel is easily dismissed for three reasons.  First, Starnet did not issue a reservation of rights with respect to Insuring Agreement K.  Starnet issued a denial.  (Doc. 4-4; Doc. 4-6).  The only reservation of rights was in connection with Insuring Agreement E.  (Doc. 4-2).  1st Financial's resort to case law discussing reservations of rights in connection with Insuring Agreement K is nonsensical.  (Doc. 19 at p. 22–23).

1st Financial's argument therefore seems to be that an insurance company can somehow waive its denial letter or be estopped from denying coverage that it already denied more than two years ago.  Starnet is unaware of any case in Missouri that has addressed such an argument.

Even putting this aside, 1st Financial misunderstands how waiver and estoppel work, which dovetails into the second reason that the doctrines are inappropriately asserted here.  The parties' dispute about Insuring Agreement K focuses on the meaning of the insuring agreement itself, as opposed to an exclusion.  The insuring agreement cannot be waived.  *See*, *e.g.*, *Martin v. U.S. Fid. & Guar. Co.*, 996 S.W.2d 506, 511 (Mo. banc 1999) (citing *Great W. Cas. Co. v. Wenger*, 748 S.W.2d 926, 928–29 (Mo. App. W.D. 1988)); *Lero v. State Farm Fire & Cas. Co.*, 359 S.W.3d 74, 81 (Mo. App. W.D. 2011).  If it could, it would allow an insured to create coverage where coverage does not exist.  *See id.*

Additionally, 1st Financial must have altered its behavior to its own detriment based on reasonable reliance on a representation by Starnet.  *Lero*, 359 S.W.3d at 79.  As set forth above, Starnet denied coverage under Insuring Agreement K.  If 1st Financial acted based on an unreasonable belief that Insuring Agreement K provided coverage, it is not because of anything Starnet did or did not do.

Third and finally, 1st Financial complains that Starnet did not tell it that the Underlying

9

Lawsuit did not plead claims within the scope of Insuring Agreement K.  (Doc. 19 at pp. 23–24). The exhibits attached to the Complaint contradict this assertion.  (Doc. 4-4; Doc. 4-6).

Accordingly, neither waiver nor estoppel prevents entry of an order of dismissal of the Complaint.

## **CONCLUSION**

There is no duty to defend or indemnify 1st Financial under Insuring Agreements I and K of the Starnet Policy.  1st Financial cannot avoid that Insuring Agreement I does not apply to "lending acts," which is the exact conduct alleged in the Underlying Lawsuit.  The Underlying Lawsuit also never pled claims for defamation or invasion of privacy.  The Underlying Lawsuit quoted policy language, but that is not the same as pleading and proving the necessary elements of any defamation or invasion of privacy claim.  To the extent 1st Financial nonetheless purports to have settled the equitable relief sought in connection with any such "claims," it did so voluntarily and without being legally obligated.  As a result, Insuring Agreements I and K are not triggered for these further reasons.

Accordingly, this Court should enter an Order dismissing the Complaint with prejudice.

Dated: May 24, 2022                                                         Respectfully submitted,

*/s/ Meredith A. Webster*
Meredith A. Webster                    #63310MO
**KUTAK ROCK LLP**
2300 Main Street, Suite 800
Kansas City, MO 64108
(816) 960-0090
(816) 960-0041 (Facsimile)
Meredith.Webster@kutakrock.com
**ATTORNEYS FOR DEFENDANT**

10

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 24th day of May, 2022, a copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF Filing System, with notification to the below listed counsel of record:

David E. Larson
Martin, Pringle, Oliver, Wallace & Bauer, LLP
One Main Plaza
4435 Main Street, Suite 920
Kansas City, MO 64111
delarson@martinpringle.com
**ATTORNEYS FOR PLAINTIFF**

                                        */s/ Meredith A. Webster*
                                        **ATTORNEY FOR DEFENDANT**

4894-8699-4464